# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Richard Reinhardt p/k/a Richie Ramone,          :

      Plaintiff,          :          **AMENDED COMPLAINT**

        -v-          :          07 CV 8233 (SAS)

Wal-Mart Stores, Inc., Apple, Inc.,
RealNetworks, Inc., Taco Tunes, Inc,          :          **JURY TRIAL DEMANDED**
Ramones Productions, Inc.,
Estate of John Cummings, Herzog & Strauss and          :
Ira Herzog

                  :

      Defendants.          :

                  :

---

Plaintiff, by his attorneys, Roberts & Ritholz LLP, alleges as follows:

### PRELIMINARY STATEMENT

This is a civil action for copyright infringement. From 1983 to 1987 the plaintiff,

Richard Reinhardt, p/k/a Richie Ramone ("Plaintiff" or "Richie"), was a member of the iconic

punk band, The Ramones. During his tenure with The Ramones, Richie wrote, and is the sole

author of six songs (the "Compositions"). The five Ramones Defendants (defined herein)

comprise the core of the Ramones' management, and have broadly exploited the Compositions

despite the absence of any agreement authorizing such uses. The remaining Defendants – Apple,

Wal-Mart and Real Networks (the "Digital Defendants") sell digital downloads embodying the

Compositions, under purported authorization from some of the Ramones Defendants.

Significantly, Richie has never licensed or authorized the use of the Compositions in any digital

formats. Accordingly, each of the Defendants has infringed Richie's copyright in the

Compositions. This action seeks compensatory damages for the Defendants' infringing conduct

and injunctive relief to prevent similar activity in the future.

## JURISDICTION & VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1338(a).

2.    This Court has personal jurisdiction over each of the Defendants because each of the corporate defendants is doing business in New York and the individual defendant resides in New York.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391 (b).

## THE PARTIES

4.    Plaintiff Richard Reinhardt is an individual residing in Scottsdale, Arizona.

5.    Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is, among other things, engaged in the business of distributing sound recordings and other digital media through its WalMart.com internet service.  Wal-Mart is a Delaware corporation that maintains its principal place of business in Bentonville, Arkansas.

6.    Defendant Apple, Inc. ("Apple") is, among other things, engaged in the business of distributing sound recordings and other digital media in electronic form through its iTunes service.  Apple is a California corporation that maintains its principal place of business in Cupertino, California.

7.    Defendant RealNetworks, Inc. ("Real") is engaged in the business of distributing sound recordings and other digital media in electronic form, and is a Washington corporation which maintains its principal place of business in Seattle, Washington.  (Wal-Mart, Apple and Real are referred to collectively as the "Digital Defendants.").

8.    Defendant Taco Tunes, Inc. ("Taco") is a New York Corporation engaged in the business of exploiting musical compositions owned by certain members of the Ramones, which maintains its principal place of business in New York.

9.    Defendant Ramones Productions, Inc. ("RP") is a New York corporation engaged in the business of exploiting intellectual property, merchandise and other products associated with the Ramones, which maintains its principal place of business in New York.

10.    Defendant Estate of John Cummings ("the Estate") is the estate of The Ramones' deceased lead man, who was professionally known as Johnny Ramone ("Cummings").

11.    Defendant Herzog and Strauss ("HS") is a partnership engaged in the business of providing accounting, management and financial advisory services, which maintains its principal place of business in New York.

12.    Defendant Ira Herzog is an individual living in the State of New York, and is a partner of Defendant HS. (Taco, RP, HS, the Estate and Herzog are referred to collectively as the "Ramones Defendants").

## FACTS COMMON TO ALL CLAIMS

13.    Between 1983 and 1987, Plaintiff authored the six Compositions – *Smash You, Somebody Put Something in My Drink, Human Kind, I'm Not Jesus, I Know Better Now* and *(You) Can't Say Anything Nice.*

14.    Each of the Compositions was solely authored by the Plaintiff.

15.    Copyright registration applications (Form PA) have been filed in the U.S. Copyright Office for each of the Compositions prior to the date of this amended complaint.

16.    In 1984, plaintiff entered into a recording agreement with RP (the "Recording Agreement"). The Recording Agreement provides for RP to engage Plaintiff to record with the

Ramones, and for RP to make royalty payments to Plaintiff that are attributable to his performances on certain Ramones recordings.

17.    Although the Recording Agreement contemplates a music publishing agreement between Plaintiff and Taco, the parties never agreed to terms, and no agreement was ever completed.

18.    Accordingly, subject to RP's right to exploit physical recordings embodying Ramones recordings, all of the Compositions are solely owned by Plaintiff, and neither Taco nor any other Ramones Defendant has ever had right to exploit the Compositions without Plaintiff's authorization.

19.    In the Recording Agreement, Plaintiff granted RP the limited right create physical sound recordings embodying the Compositions.  However, Plaintiff has never granted any other rights in the Compositions to any Defendant.  Specifically, Plaintiff has never authorized the duplication, distribution, performance or other exploitation of the Compositions in any non-physical digital format or any other non-physical configuration.

20.    In blatant contravention of Plaintiff's sole ownership of the Compositions, Defendant Taco has exploited the Compositions continuously for more than twenty (20) years, and has and continues to hold itself out as the publisher of the Compositions.  Taco has also authorized third parties  to use the Compositions without authorization from Plaintiff to do so.

21.    Specifically, Taco has authorized the Digital Defendants to distribute and duplicate non-physical digital copies of the Compositions electronically (i.e. over the internet and wireless networks).

22.    For more than twenty (20) years, Taco has collected royalties and other fees attributable to the Compositions.

23.    For more than twenty (20) years, Taco's policies and operations have been controlled in whole or in part by Cummings and the Estate, Herzog, HS and RP.

24.    Defendant Apple has continuously sold and offered to sell digital recordings of one or more of the Compositions on its iTunes service.

25.    Defendant Wal-Mart has continuously sold and offered to sell digital recordings of one or more of the Compositions on its WalMart.com music download service.

26.    Defendant Real has continuously sold and offered to sell digital recordings of one or more of the Compositions on its Real Store and Rhapsody service.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

27.    The allegations contained in Paragraphs 1 through 25 are repeated and realleged as if set forth fully herein.

28.    As a result of Defendants' exploitation of the Compositions without Plaintiff's authorization, the Defendants have infringed Plaintiff's copyrights in the Compositions.

29.    The Defendants conduct has been and continues to be knowing and willful.

30.    As a result of the Defendants' conduct, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $900,000.

## SECOND CLAIM FOR RELIEF
### (Contributory Infringement – The Estate, Herzog, HS and RP)

31.    The allegations contained in paragraphs 1 through 29 are repeated and realleged as if set forth fully herein.

32.    By directing the policies, activities and operations of Taco, the Estate, Herzog, HS and RP are liable for contributory infringement of Plaintiff's copyrights in the Compositions.

33.    The Estate, Herzog, HS and RP's conduct in directing the policies, activities and operations of Taco has been and continues to be knowing and willful.

34.    As a result of the Estate, Herzog, HS and RP's contributory infringement of Plaintiff's copyrights, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $900,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff's pray for judgment as follows:

a.    All of Plaintiff's actual damages and Defendants' profits attributable to the infringement of Plaintiff's copyrights in the Compositions;

b.    Statutory damages in the maximum amount allowed by law;

c.    An permanent injunction, prohibiting the Defendants from using the Compositions in any manner whatsoever;

d.    A declaration that Plaintiff is the sole owner of all copyrights in the Compositions

e.    All of Plaintiff's reasonable attorney fees and other costs of suit;

f.    All lawful interest on the above; and

g.    Such other further relief that this Court shall deem just and proper.

Dated: New York, New York
      January 8, 2008

                    ROBERTS & RITHOLZ LLP

                    By: _____
                    Jeff Sanders (JS 3989)
                    183 Madison Avenue, Penthouse
                    New York, New York 10016
                    Tel: (212) 448-1800
                    Email: jsanders@robritlaw.com

                    *Attorneys for Plaintiff*

# EXHIBIT B



| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = Beau Richard
Search Results: Displaying 1 of 4 entries



| Labeled View |

*Human kind / Richie Ramone.*

|  |  |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0000249110 / 1985-05-23 |
| **Title:** | Human kind / Richie Ramone. |
| **Appears in:** | Too tough to die. Sire 1-25187, c1984. 1 sound disc : 33 1/3 rpm ; 12 in. side 2, band 4 |
| **Publisher Number:** | Sire 1-25187 |
| **Performer:** | Performed by Ramones. |
| **Copyright Claimant:** | Taco Tunes, Inc. |
| **Date of Creation:** | 1984 |
| **Date of Publication:** | 1984-10-01 |
| **Authorship on Application:** | words & music: Richard Beau (pseud., Richie Ramone) |
| **Names:** | Beau, Richard |
|  | Ramone, Richie, pseud. |
|  | Ramones |
|  | Taco Tunes, Inc. |



| Save, Print and Email (Help Page) |
|---|
| Select Download Format  Full Record    [ Format for Print/Save ] |
| Enter your email address:    [ Email ] |

Help    Search    History    Titles    Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page





# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = Beau Richard
Search Results: Displaying 2 of 4 entries

[◀ previous]   [next ▶]

[ Labeled View ]

*I know better now / Richie Ramone.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0000353612 / 1987-12-28 |
| **Title:** | I know better now / Richie Ramone. |
| **Appears in:** | Halfway to sanity. Sire 1-25641, c1987. 1 sound disc : 33 1/3 rpm ; 12 in. side 1, band 6 |
| **Publisher Number:** | Sire 1-25641 |
| **Performer:** | Performed by Ramones. |
| **Copyright Claimant:** | Taco Tunes, Inc. |
| **Date of Creation:** | 1987 |
| **Date of Publication:** | 1987-09-01 |
| **Authorship on Application:** | words & music: Richard Beau (pseud., Richie Ramone) |
| **Names:** | Beau, Richard |
| | Ramone, Richie, pseud. |
| | Ramones |
| | Taco Tunes, Inc. |

[◀ previous]   [next ▶]





| Save, Print and Email (**Help Page**) |
|---|
| Select Download Format  Full Record       [ Format for Print/Save ] |
| Enter your email address:              [ Email ] |

Help   Search   History   Titles   Start Over

Case 1:07-cv-08233-SAS     Document 6-2     Filed 01/18/2008     Page 12 of 30

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page



| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = Beau Richard
Search Results: Displaying 3 of 4 entries



Labeled View

*I'm not Jesus / Richie Ramone.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0000353616 / 1987-12-28 |
| **Title:** | I'm not Jesus / Richie Ramone. |
| **Appears in:** | Halfway to sanity. Sire 1-25641, c1987. 1 sound disc : 33 1/3 rpm ; 12 in. side 2, band 4 |
| **Publisher Number:** | Sire 1-25641 |
| **Performer:** | Performed by Ramones. |
| **Copyright Claimant:** | Taco Tunes, Inc. |
| **Date of Creation:** | 1987 |
| **Date of Publication:** | 1987-09-01 |
| **Authorship on Application:** | words & music: Richard Beau (pseud., Richie Ramone) |
| **Names:** | Beau, Richard |
| | Ramones |
| | Taco Tunes, Inc. |



| Save, Print and Email (**Help Page**) |
|---|
| Select Download Format  Full Record    Format for Print/Save |
| Enter your email address:    Email |

Help    Search    History    Titles    Start Over

Case 1:07-cv-08233-SAS    Document 6-2    Filed 01/18/2008    Page 14 of 30

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------X

RICHARD REINHARDT
(fka Richie Ramone and Richie Beau),
an individual,

                  Plaintiff,

      -against-

JOHN CUMMINGS (aka JOHN RAMONE and
JOHNNY RAMONE), an individual; TACO
TUNES, INC., a New York corporation;
RAMONES PRODUCTION, INC.,
a New York company, HERZOG & STRAUS,
a New York partnership; IRA HERZOG, an individual;
and DOES 1 through 10 inclusive,

                  Defendants.

-----------------------------------------------------------X

Index No.: 046 01064

**VERIFIED COMPLAINT**

**PLAINTIFFS DEMAND
A JURY TRIAL ON ALL
ISSUES**

NEW YORK
COUNTY CLERK'S OFFICE

APR 19 2004

NOT COMPARED
WITH COPY FILED

      Plaintiff Richard Reinhardt ("Plaintiff" or "Mr. Reinhardt"), by and through his attorneys, WILLENKEN WILSON LOH & STRIS LLP, complains of Defendants and respectfully alleges, on personal knowledge as to his own activities, and on information and belief as to the activities of others, as follows:

## INTRODUCTION AND SUMMARY OF THE NATURE OF THIS ACTION

      1.    Plaintiff Richard Reinhardt (formerly known as "Richie Ramone" and "Richie Beau") played drums for the band called the "Ramones," from 1983 to 1987. In 2002, the Ramones were inducted in the Rock and Roll Hall of Fame.

      2.    During his tenure with the Ramones, Mr. Reinhardt played drums in approximately 400 live shows, wrote and composed six songs that the Ramones recorded, and drummed on three Ramones studio albums—"Too Tough to Die," "Animal Boy," and "Halfway to Sanity."

      3.    One of those six songs, of which Mr. Reinhardt was the sole author, was the hit song "Smash You."

4.    While he was in the band, Mr. Reinhardt was openly praised for his songwriting by the late Joey Ramone (also known as Jeffrey Hyman):

> "We wanted [Richie] to feel part of the band.  We never let the drummer write before, because John, Dee Dee and I felt like we were the band. Marc Bell [another drummer for the Ramones] would try to give us songs, but they weren't any good—he wouldn't even write them, his brother would. But Richie's a regular Phil Collins."

5.    Mr. Reinhardt's hard work and creative talent for songwriting and drumming for the Ramones led to a contract pursuant to which defendants and Ramones Productions, Inc. ("Ramones Productions"), and Taco Tunes, Inc. ("Taco Tunes"), agreed to pay Mr. Reinhardt royalties (the "1984 Contract").  Mr. Reinhardt, and defendants Ramones Productions and Taco Tunes are parties to the 1984 Contract, a true and correct copy of which is attached hereto as Exhibit 1.  Mr. Reinhardt has been unable to locate two exhibits that were apparently part of the 1984 Contract: 1) the Ramones' record contract referred to in paragraph 1(h) of the 1984 contract, which was attached as Exhibit A to the 1984 Contract; and 2) the songwriting agreement between the Ramones and Taco Tunes referred to in paragraph 10(b) of the 1984 Contract.

6.    Defendants Ira Herzog ("Mr. Herzog"), and Herzog & Straus, (together the "Herzog defendants"), are representatives of defendants Ramones Productions and Taco Tunes.  Mr. Herzog, of Herzog and Strauss, signed the 1984 contract in a representative capacity on behalf of defendants Ramones Productions, and Taco Tunes.

7.    Under the 1984 Contract, Ramones Production, Inc. must pay Mr. Reinhardt royalties ranging from 11.8% to 25%, depending upon the album on which the songs were released.  Under this contract, the bulk of Mr. Reinhardt's songs

2

should carry a royalty rate of 18.9% or higher because they are from the second or subsequent albums.

8.    Under the 1984 Contract, Mr. Reinhardt is also entitled to songwriting royalties from his publisher, defendant Taco Tunes, based upon Mr. Reinhardt's contribution to the song. Mr. Reinhardt is entitled to 100% of the songwriting royalty for songs of which he is the sole author.

9.    Taco Tunes has paid Mr. Reinhardt songwriting royalties of only 25% for certain songs Mr. Reinhardt wrote alone, and therefore for which he is actually entitled to 100% songwriting royalties. In particular, Mr. Reinhardt is the sole author of the song "Smash You." He is therefore entitled to 100% of the songwriting royalty for "Smash You," under the 1984 Contract. Nevertheless, defendants have misappropriated songwriting credit for "Smash You" on two recently released albums: 1) the expanded and remastered edition of "Too Tough To Die;" and 2) the bonus compact disk entitled "Ramones Smash You! * Live '85," which was included in the first fifty-thousand (50,000) copies of "Loud, Fast Ramones: Their Toughest Hits." Warner Bros. Records, Inc. and/or its affiliates ("Warner Records") released these albums.

10.    After the death of Joey Ramone in 2001, a perceived resurgence in interest in the Ramones, and rumors that Mr. Reinhardt was owed more money, caused him to inquire about additional royalties that were probably owed to him. But when Mr. Reinhardt and his representatives contacted Mr. Herzog, Mr. Herzog claimed that the Ramones had not made money for years, and that only limited additional royalty payments were owed to Mr. Reinhardt.

11.    Mr. Herzog has repeatedly made false representations to Mr. Reinhardt about the existence and amount of royalty income to which Mr. Reinhardt is entitled. Mr. Herzog has falsely represented in direct communication to Mr. Reinhardt, that Mr. Reinhardt is entitled to a royalty rate of 12.50%, regardless of the album on which the

song was released, notwithstanding the sliding scale ranging from 11.8% to 25% provided for in the 1984 Contract.

12.    Mr. Reinhardt attempted to verify Mr. Herzog's claim by having an accountant examine the documents related to his royalty payments. The 1984 Contract entitles Mr. Reinhardt to copies of these original statements and to inspect Ramones Productions' books and records relating to his royalties. Despite Mr. Reinhardt's contractual right to access to this information, Mr. Herzog refused to provide Mr. Reinhardt or his accountant with access to the original statements from the record companies paying royalties, or to allow inspection of the relevant books and records.

13.    Instead of allowing access to the original statements, Ira Herzog created separate royalty statements on behalf of Ramones Productions and Taco Tunes, regarding royalty payments to Mr. Reinhardt. These statements have repeatedly misrepresented the amount of royalties the defendants owe Mr. Reinhardt.

14.    Furthermore, by creating the separate royalty statements, Ira Herzog has denied Mr. Reinhardt the ability to check Mr. Herzog's calculations against those of the defendant record companies owing the Ramones royalties. Consequently, Mr. Herzog knew that he placed Mr. Reinhardt in a position to rely on the royalty statements he generated, and Mr. Reinhardt relied on those statements to his detriment.

15.    In reliance on Mr. Herzog's representations, in January 2002, Mr. Reinhardt accepted a $32,000 payment for past due royalties. Mr. Herzog's representations were false. Defendants owe Mr. Reinhardt substantially more money in royalty payments because, among other things, Mr. Herzog misstated the appropriate royalty percentage.

16.    After receiving the $32,000 payment in 2002, Mr. Reinhardt's wife, Annette Reinhardt, contacted Mr. Herzog on Mr. Reinhardt's behalf, questioning

4

whether the amount properly represented the royalty payments Mr. Reinhardt was due. In response, Mr. Herzog misrepresented to Ms. Reinhardt that he had the power to end Mr. Reinhardt's royalty payments if further doubts were expressed about their appropriateness. In fact, Mr. Herzog has no such right. Mr. Herzog's false representation about his authority to terminate Mr. Reinhardt's royalty payments deterred Mr. Reinhardt from investigating Mr. Herzog's calculations regarding past due royalties.

17.    Mr. Reinhardt is informed and believes and on that basis alleges that Defendant John Cummings ("Mr. Cummings"), has long acted as the de facto business manager of the Ramones. Mr. Reinhardt is further informed and believes that Mr. Cummings' control over the Ramones' recordings (including those works that Mr. Reinhardt has contributed to) has increased after the death of Mr. Hyman. Mr. Reinhardt is informed and believes and on that basis alleges that Mr. Cummings has conspired with the Herzog defendants, Ramones Productions, and Taco Tunes, in a fraudulent scheme to: 1) avoid paying Mr. Reinhardt his appropriate share of royalties since his departure from the band; and 2) to eliminate the songwriting credit to which Mr. Reinhardt is entitled for being the sole author of the song "Smash You."

18.    In this suit, Mr. Reinhardt seeks damages from all defendants for fraud, breach of contract, and negligent misrepresentation. In addition, Mr. Reinhardt seeks damages from the Herzog defendants for negligent preparation of financial reports.

## THE PARTIES

19.    Plaintiff Richard Reinhardt is an individual residing the County of Los Angeles, California.

20.    Based upon information and belief, Mr. Reinhardt alleges that Defendant John Cummings (also known as "John Ramone" or "Johnny Ramone") is an individual residing in Los Angeles County, California.

5

21.     Based upon information and belief, Mr. Reinhardt alleges that Defendant Ira Herzog is an individual residing in New York, New York. Mr. Herzog is a certified public accountant.

22.     Based upon information and belief, Mr. Reinhardt alleges that Defendant Herzog and Straus is a New York partnership with its principal place of business in New York, New York. Mr. Herzog is a principal of Herzog and Straus, and Mr. Reinhardt alleges on information and belief that Herzog and Straus is an alter ego of Mr. Herzog.

23.     Based on information and belief, Mr. Reinhardt alleges that Defendant Ramones Productions, Inc. ("Ramones Productions") is a New York corporation with its principal place of business in New York, New York. Mr. Reinhardt is informed and believes that Ramones Productions controls the non-publishing business of the Ramones. Mr. Reinhardt is further informed and believes that Mr. Cummings has de facto control over Ramones Productions, and that, pursuant to Mr. Cummings' instructions, Mr. Herzog manages Ramones Productions on a day-to-day basis.

24.     Based upon information and belief, Mr. Reinhardt alleges that Defendant Taco Tunes, Inc. is a New York Corporation with its principal place in New York, New York. Mr. Reinhardt is informed and believes that Taco Tunes is the publisher of many of the Ramones' songs—including a number of songs, such as "Smash You," written by Mr. Reinhardt. Mr. Reinhardt is informed and believes that Mr. Cummings has de facto control over Taco Tunes, and that pursuant to Mr. Cummings' instructions, Mr. Herzog manages Taco Tunes on a day-to-day basis.

25.     Mr. Reinhardt is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 though 10, inclusive, or any of them, and therefore sues these Defendants, and each of them, by such fictitious names. The Doe Defendants include persons and entities assisting or acting in concert with the named Defendants in connection with the actions

6

complained of herein and include persons who and entities that have reproduced, displayed, and distributed Plaintiff's work infringed by Defendants as alleged below. Plaintiff will seek leave of this Court to amend this Complaint when the status and identities of these Defendants are ascertained.

<u>FACTS GIVING RISE TO THIS ACTION</u>

26.     The Ramones band was formed in 1974, and is widely recognized as one of the most influential American punk bands.

27.     Mr. Reinhardt joined the Ramones in early 1983.

28.     While he was with the band, Mr. Reinhardt played on three of the Ramones fourteen studio albums: "Too Tough To Die," "Animal Boy" and "Halfway To Sanity".

29.     As with other members of the Ramones, Mr. Reinhardt assumed the alias of a "Ramone," and was known as "Richie Ramone." Mr. Reinhardt was also known as "Richie Beau."

30.     In or about 1984, Mr. Reinhardt wrote and composed the song "Smash You." "Smash You" was included on the B-Side of the Ramones' album "Howling at the Moon," which was released in the United Kingdom as a seven inch single on the Beggars Banquet label in February of 1985. A true and correct copy of the front and back side of the single is attached hereto as Exhibit 2. As the label shows, "Smash You" was written and composed by "Richie Beau"—Plaintiff's alias.

31.     "Smash You" was also released on the Beggars Banquet label as part of a two seven inch record set in March of 1985. A true and correct copy of the front and back of the "Smash You" record in this release, as well as the front, center, and back of this two seven inch single set, is attached hereto as Exhibit 3. This record also credits "Smash You" to Richie Beau.

32.     Mr. Reinhardt is informed and believes that in early 1985, the Beggars Banquet label also released "Smash You" in two other formats: a twelve inch single

40.    As is evident from Exhibit 4 (at pages 55-56 herein), the expanded and remastered "Too Tough To Die" compact disc fails to give songwriting credit to Mr. Reinhardt for "Smash You." Instead, the compact disc attributes writing credit to "The Ramones"—a song writing association apparently consisting of Jeffrey Hyman, Douglas Colvin, and John Cummings (also known as "John Ramone").

41.    Furthermore, Mr. Reinhardt is informed and believes that in early 2003, Warner Records released a new collection of Ramones songs entitled: "Loud, Fast Ramones: Their Toughest Hits." This collection included in the first 50,000 copies an eight song bonus compact disc entitled "Ramones Smash You! * Live '85" that contains "Smash You" again credited to "the Ramones" rather than Mr. Reinhardt. This bonus album was based upon a recording of a Ramones show in England in 1985, during which Mr. Reinhardt drummed for the Ramones. A true and correct photocopy of the bonus compact disc is attached hereto as Exhibit 5.

42.    The advertisements for "Loud, Fast Ramones: Their Toughest Hits" highlighted that the first 50,000 copies included a limited edition bonus compact disc, "Ramones Smash You! * Live '85." A true and correct copy of an advertisement for "Loud, Fast Ramones: Their Toughest Hits," which ran in *LA Weekly* in late February, 2003, is attached hereto as Exhibit 6.

43.    A sticker affixed to the front of the "Loud, Fast Ramones: Their Toughest Hits," compact disc, makes prominent mention of the fact that Johnny Ramone (Defendant, John Cummings), "assembled" the songs in this compilation. A true and correct copy of the front of the compact disc's cover is attached hereto as Exhibit 7.

44.    Cummings' assembly of the songs on "Loud, Fast Ramones: Their Toughest Hits" indicates that John Cummings/Johnny Ramone has primarily acted as the band's de facto business manager. One person who is familiar with the Ramones' inner workings noted that: "Every time I would see Johnny [Defendant John

9

and a two twelve inch record set.  Mr. Reinhardt alleges, on information and belief, that both of these formats named Richie Beau as the composer of "Smash You."

33.    In 1987, Mr. Reinhardt left the Ramones to pursue other career interests.

34.    Upon information and belief, Mr. Reinhardt alleges that the Ramones played their last show in 1996.

35.    On or about April 15, 2001, the lead singer of the Ramones (and one of its four founding members), Jeffrey Hyman (also known as "Joey Ramone"), died of cancer.

36.    On or about March 18, 2002, the Ramones band was inducted into the Rock and Roll Hall of Fame.

37.    On or about June 5, 2002, the Ramones' main songwriter and another founding member, Douglas Colvin (also known as "Dee Dee Ramone"), died at his Los Angeles home.

38.    Mr. Reinhardt is informed and believes that these three events (though two of which were tragic) caused media and popular interest in the Ramones and their music to surge.  Mr. Reinhardt is further informed and believes and on that basis alleges that sales of each of the group's recordings increased.  Furthermore, Mr. Reinhardt is informed and believes that the resurgence of interest caused old albums to be expanded and remastered and brought new compilations compact discs to market.  Recently, a major television marketing campaign for ATT Wireless, a national wireless phone company, used the Ramones' song "Blitzkrieg Pop."

39.    Mr. Reinhardt is informed and believes that in 2002, Warner Records released an expanded and remastered version of the album "Too Tough To Die".  Attached hereto as Exhibit 4 is a true and correct copy of linear notes from the expanded and remastered "Too Tough To Die".  Unlike the initial release, the re-release contains four bonus tracks including "Smash You."

Cummings] backstage, it would be like, 'When's our next job?' It was never a gig or a date or a show. In Johnny's own words, he was the businessman." The Story of the Ramones, p. 11.

45. Likewise, in his book, Lobotomy: Surviving the Ramones, Thunder's Mouth Press 2000, Dee Dee Ramone (Douglas Colvin) depicted Mr. Cummings as the self-appointed leader of the band.

46. Mr. Cummings is known as a very careful businessman. As Everett True noted in his recent book about the Ramones, "Johnny—the consummate professional—kept records about everything concerning the band. The Story of The Ramones, page 21.

47. Mr. Cummings made certain the Ramones would not be cheated. In a recently published interview, Arturo Vega, the Ramones' lighting manager, made clear that Johnny Ramone carefully managed every aspect of the Ramones' business:

"That was Johnny—he may not have been creative but he kept things together. He looked after the band and the band's interests. He protected the band from unscrupulous promoters and record companies." The Story of The Ramones, page 196.

48. Mr. Reinhardt is informed and believes and on that basis alleges that as the Ramones' de facto band manager and a principal of Taco Tunes and Ramones Productions, Mr. Cummings has consistently acted to further his own financial interest in the Ramones, often at the expense of his band mates' interests. For example, in February 2003, Marky Ramone (Marc Bell, who was the Ramones' drummer from 1979 to 1983, and 1987 to 1996) told NY Rock, an online music publication, that Mr. Cummings' reaction to the death of Joey Ramone and Dee Dee Ramone was "Who cares? It will sell more records."

49. In 2003, Mr. Reinhardt learned that Defendants had inappropriately failed to give him writing credit for "Smash You." Upon learning of this failure, Mr.

10

Reinhardt sent a letter dated April 10, 2003 to Mr. Herzog, the certified public accountant who manages the Ramones' royalties. A true and correct copy of this letter is attached hereto as Exhibit 8. In this letter, Mr. Reinhardt advised Mr. Herzog that both the expanded and remastered "Too Tough To Die" compact disc and the new "Loud, Fast Ramones" compact disc failed to give him writing credit for "Smash You."

50.     Mr. Herzog orally acknowledged that "Smash You" was Mr. Reinhardt's song, and promised to correct the problem. But nothing was done.

51.     In late May, 2003, Mr. Reinhardt's counsel asked Herzog to provide copies of all contracts relevant to Mr. Reinhardt's royalty payments. A true and correct copy of the letter in which this request was made is attached hereto as Exhibit 9.

52.     In response, Mr. Herzog claimed that he had lost any pertinent contracts, and that Mr. Reinhardt was only entitled to a royalty of 12.5% for all the songs he had recorded as a Ramone. A true and correct copy of Mr. Herzog's response is attached hereto as Exhibit 10. In that letter, Mr. Herzog, who just a month earlier had acknowledged that Mr. Reinhardt wrote "Smash You," omitted "Smash You" from a list of compositions that he acknowledged Mr. Reinhardt had composed.

53.     Upon information and belief, Defendants and each of them continue to fail to account properly for royalties due to Plaintiff, including by engaging in a pattern and practice of usurping writing credit in an effort to deny royalties due to Plaintiff.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (Against Ramones Productions, Inc. and Taco Tunes, Inc.)

54.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 53 of this Complaint as though fully set forth at length.

55.    On or about August 1, 1984, Mr. Reinhardt entered into a contract with Ramones Productions and Taco Tunes (the "1984 Contract," attached hereto as Exhibit 1, *see supra*, paragraph 5). The 1984 Contract governs Mr. Reinhardt's rights and duties as a member of the Ramones with respect to the band's recordings. Pursuant to this contract, Ramones Productions and Taco Tunes agreed that Mr. Reinhardt would receive certain royalty payments.

56.    Specifically, Ramones Productions agreed in paragraph 8 of the 1984 Contract that royalties would be calculated on the following basis:

a.    With respect to Masters included on or recorded at the same time as the first LP recorded hereunder, Company [Ramones Productions] shall pay Artist a royalty equal to 11.8% of all royalties paid to Company or Credited to Company's account pursuant to the Record Contract;

b.    With respect to Masters included on or recorded at the same time as the second LP recorded hereunder, Company [Ramones Productions] shall pay Artist a royalty equal to 18.9% of all royalties paid to Company or Credited to Company's account pursuant to the Record Contract;

c.    With respect to Masters included on or recorded at the same time as the third LP recorded hereunder, Company [Ramones Productions] shall pay Artist a royalty equal to 23% of all royalties paid to Company or Credited to Company's account pursuant to the Record Contract;

d.    With respect to all other Masters recorded hereunder, Company [Ramones Productions] shall pay Artist a full Member's share [25%] of all royalties paid to Company or Credited to Company's account pursuant to the Record Contract.

12

57.    Mr. Reinhardt recorded four albums governed by the 1984 Contract: "Too Tough to Die," "Animal Boy," "Halfway to Sanity," and the recently released "Ramones Smash You! * Live '85." Thus, under the 1984 Contract, Mr. Reinhardt is entitled to receive an 11.8% royalty from tracks released on the initial "Too Tough to Die" album; an 18.9% royalty on tracks released on "Animal Boy;" a 23% royalty on tracks released on "Halfway to Sanity;" and a 25% royalty on tracks released on "Ramones Smash You! * Live '85."

58.    Mr. Reinhardt has performed all of his obligations under the 1984 Contract.

59.    Ramones Productions has breached its contract with Mr. Reinhardt in failing to abide by the royalty structure set forth by only paying Mr. Reinhardt a 12.5% royalty for certain of his Ramones recordings, and for failing to pay royalties on other recordings to which Mr. Reinhardt is entitled to royalties pursuant to the 1984 contract.

60.    On other occasions, Ramones Productions has breached the 1984 contract by paying Mr. Reinhardt no royalties whatsoever. For example, in the second page of a royalty statement for the quarter ending September 30, 2002, a true and correct copy of which is attached hereto as Exhibit 11, Ramones Productions claims that no royalties are due Mr. Reinhardt for the song "Go Lil' Camaro Go." In fact, because this song was recorded for his third album as a Ramone, "Halfway to Sanity," Mr. Reinhardt was entitled to a royalty of 23%. But Mr. Herzog's royalty statement on behalf of Ramone Productions asserts that Mr. Reinhardt is owed nothing.

61.    Pursuant to paragraph 10(c) of the 1984 Contract, Taco Tunes agreed to give Mr. Reinhardt songwriting credit for any "controlled composition." Attached as Exhibit B to the 1984 contract was a list of controlled compositions that were in existence at the time the 1984 contract was executed. Exhibit B to the 1984 Contract

13

listed "Smash You" as one of the controlled compositions to which Mr. Reinhardt was entitled to songwriting credit.

62.    The 1984 Contract also provides that Mr. Reinhardt will receive royalties from the Publisher, Taco Tunes, for songs he authored, "controlled compositions," in proportion to his writing contribution.  Page 11 of the 1984 Contract states:

> Publisher further warrants and represents that it distributes to the members of the Ramones all sums received by it in respect of their compositions without any deductions and that such distributions are pro-rated according to each songwriter's contribution to the composition. Publisher agrees that the Controlled Compositions delivered by Artist hereunder will be exploited by Publisher in the foregoing manner, and that *Publisher will pay Artist all sums received by it from its exploitation of the Controlled Composition, without any deductions whatsoever, based upon Artist's contribution to the Controlled Composition.*

Exhibit 1 (at page 31 herein) (Emphasis added).

63.    Taco Tunes has breached its contract with Mr. Reinhardt by failing to give him songwriting credit for "Smash You," in the expanded and remastered edition of "Too Tough to Die" and in the bonus compact disc, "The Ramones Smash You! * Live '85," and therefore, it has improperly avoided paying Mr. Reinhardt the songwriting royalties to which he is entitled under the 1984.

64.    Mr. Reinhardt has suffered damages as a direct and proximate result of Ramones Productions' and Taco Tunes breaches of the 1984 Contract.  The amount of damages is to be determined at trial.

14

## SECOND CLAIM FOR RELIEF

### Fraud

### (Against Defendants John Cummings, Ira Herzog, and Herzog and Strauss)

65.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 64 of this Complaint as though fully set forth at length.

66.    Mr. Reinhardt is informed and believes and on that basis alleges that Mr. Cummings, Mr. Herzog, and Herzog and Strauss (through the actions of Mr. Herzog), have conspired to form a fraudulent conspiracy which has as its unlawful and wrongful aims: 1) to prevent Mr. Reinhardt from obtaining his fair share of royalties and 2) to eliminate Mr. Reinhardt's songwriting credit from "Smash You."

67.    Mr. Reinhardt is informed and believes and on that basis alleges that as part of this fraudulent conspiracy and at the direction of Mr. Cummings, Mer. Herzog (and, by virtue of his actions, the partnership of Herzog and Straus) made a number of fraudulent misrepresentations to Mr. Reinhardt. These misrepresentations include, but are not limited to:

    a.    Mr. Herzog telling Mr. Reinhardt in 2001 that the Ramones had not made money for years, and that only a limited amount of money ($32,500) was available to him for back royalties;

    b.    Mr. Herzog telling Mr. Reinhardt's representative (Annette Reinhardt) in early 2002 that further investigation into what royalties are due to Mr. Reinhardt would result in the end of Mr. Reinhardt's royalty payments;

    c.    Mr. Herzog telling Mr. Reinhardt and his representative on numerous occasions (most recently in a May 2003 letter to Mr. Reinhardt's counsel) that Mr. Reinhardt's royalty percentage was capped at 12.5%.

68.    Mr. Herzog made these representations with the knowledge that they were false and with the intention that Mr. Reinhardt would rely on them. In fact: 1) Mr. Reinhardt was and is entitled to more than $32,500 in back royalties; 2) Mr.