UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
RICHARD REINHARDT
(pka Richie Ramone and Richie Beau), an individual,          :          07 Civ. 8233 (SAS)

                    Plaintiff,          :

      -against-          :

WAL MART STORES, INC., APPLE, INC.,          :
REALNETWORKS, INC., ESTATE OF
JOHN CUMMINGS  (aka JOHN RAMONE and          :
JOHNNY RAMONE), TACO TUNES, INC.,
RAMONES PRODUCTIONS, INC.,          :
HERZOG & STRAUS, IRA HERZOG,
               Defendants.          :
----------------------------------------------------------------------X


MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS' MOTION
TO DISMISS

TABLE OF CONTENTS

Page

Table of Authorities...................................................................................................... iii-v

Preliminary Statement........................................................................................................ 1

Allegations of the Amended Complaint ............................................................................ 3

    The Parties....................................................................................................................3
    The 1984 Agreement and The Alleged Infringement....................................................4
    Plaintiff's Litigious Filings Against The Moving Defendants ....................................7

Argument I

    THE STANDARD OF REVIEW ............................................................................... 7

Argument II

    BECAUSE PLAINTIFF EXPLICITLY GRANTED RAMONES PRODUCTIONS
    AND TACE TUNES THE RIGHT TO COMMERCIALLY EXPLOUT THE
    COMPOSITIONS IN ALL MEDIA, KNOWN OR UNKNOWN, PLAINTIFF
    CANNOT MAINTAIN AN ACTION FOR COPYRIGHT INFRINGEMENT BASED
    ON THE DIGITAL EXPLOITATION OF THESE WORKS................................... 8

Argument III

    IN THE ALTERNATIVE, SINCE A LICENSE TO COMMERCAILLY EXPLOIT
    THE MASTERS IN ALL MEDIA, KNOWN OR UNKNOWN, IS REASONABLY
    IMPLIED, PLAINTIFF CANNOT MAINTAIN AN ACTION FOR COPYRIGHT
    INFRINGEMENT....................................................................................................... 11

Argument IV

    SINCE PLAINTIFF HAS FOR OVER TWENTY YEARS KNOWLINGLY ACQUIESCED
    IN TACO TUNES' OWNERSHIP AND EXPLOITATION OF THE COMPOSITIONS, THE
    COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND THE
    DOCTRINES OF LACHES, ESTOPPEL AND IMPLIED CONSENT................................ 14

Argument V

    THIS ACTION SHOULD BE DISMISSED IN LIGHT OF PLAINTIFF'S PENDING STATE
    COURT ACTION FOR UNDERPAYMENT OF ROYALTIES OWED FOR
    EXPLOITATION OF THE COMPOSITIONS ................................................................... 18

i

Argument VI

      SINCE PLAINTIFF HAS FAILED TO ALLEGE WITH ANY PARTICULARITY THAT
      DEFENDANTS CUMMINGS, RAMONES PRODUCTIONS, HERZOG OR HERZOG
      AND STRAUSS HAD KNOWLEDGE OF, INDUCED OR MATERIALLY
      PARTICIPATED IN THE ALLEGEDLY INFRINGING CONDUCT OF OTHERS, THOSE
      DEFENDANTS CANNOT BE FOUND LIABLE FOR CONTRIBUTORY
      INFRINGEMENT ............................................................................................................... 20

Argument VII

      THE PREVAILING PARTY IN A COPYRIGHT INFRINGEMENT CASE IS ENTITLED
      TO AN AWARD OF ATTORNEY'S FEES ...................................................................... 21


Conclusion .......................................................................................................................................... 24

Table of Authorities

**Cases Cited:**                                                                    Page(s)

Allegro Corp. v. Only New Age Music, Inc., 2002 U.S.Dist. LEXIS 27449
(D. Ore. 2002) ……………………………………………………………          11

Arista Records LLC v. Lime Group LLC, 2007 U.S. Dist. LEXIS 88449
(S.D.N.Y. 2007). . . . . . . . . . . . …………………………………………          7

Barksdale v. Robinson, 211 F.R.D. 240 (S.D.N.Y. 2002) …………….…….          15

Batiste v. Island Records Inc., 179 F.3d 217 (5th Cir. 1999)…………………          10

Bell Atlantic v. Twombly, 2007 U.S. LEXIS 5901, 127 S.Ct. 1955,
167 L.Ed. 2d 929 (2007) ………………………………………………..          7

Boosey & Hawkes Music Publishers v. Walt Disney Co.,
145 F.3d 481 (2d Cir. 1998) …………………………………………….          10

Bowers v. Baystate Techs., Inc., 320 F.3d 1317 (Fed. Cir. 2003) …………          19

Byron v. Chevrolet Motor Div. of Gen. Motors Corp.,
1995 U.S.Dist. LEXIS 11115 (S.D.N.Y. 1995) ……………………….…          16

Chambers v. Time Warner, Inc., 123 F.Supp.2d 198 (S.D.N.Y. 2000)……..          10

Chivalry Film Prods. v. NBC Universal Inc., 2007 U.S.Dist. LEXIS 86889
(S.D.N.Y. 2007) ………………………………………………………          22, 23

Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693 (2d Cir. 1992)………….          19

Crescent Publn'g Group, Inc. v. Playboy Enters., 246 F.3d 142 (2d Cir. 2001)…..          22

DeCarlo v. Archie Comic Publ'ns, Inc., 127 F.Supp.2d 497 (S.D.N.Y. 2001) ..          15

Effects Assoc., Inc. v. Cohen, 908 F.2d 555 (9th Cir. 1990) ……………………          11, 12

Encyclopedia Brown Prods. V. Home Box Office, 1994 U.S.Dist. LEXIS 21372
(S.D.N.Y. 1994) ………………………………………………………          17

Faulkner v. Verizon Communications, Inc.156 F.Supp.2d 384 (S.D.N.Y. 2001)….          4

Fogarty v. Fantasy, Inc., 510 U.S. 517 (1994) …………………………..….          21, 22

Graham v. James, 144 F.3d 229 (2d Cir. 1998)  …………………………          11, 19

Green v. Warden, U.S. Penitentiary, 699 F.2d 364 (7th Cir. 1983) ………………          8

Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 750 N.Y.S.2d 565 (2002)...          10

I.A.E., Inc. v. Shaver, 74 F>3d 768 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . .     11

In re Elevator Antitrust Litig., 502 F.3d 47 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . .     8

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..     7

Ivani Contr. Corp. v. City of New York, 103 F.3d 257 (2d Cir. 1997). . . . . . . . . . .     15

Keane Dealer Servs., Inc. v. Harts, 968 F.Supp. 944 (S.D.N.Y. 1997). . . . . . . . . . .     11

Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y. 1992). . . . . . . . . . . . . . . . . . . . . . . . .     21

Kroll-O'Gara Co. v. First Defense Int'l, Inc., 2000 U.S.Dist. LEXIS 4549
(S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..     22

Livnat v. Shai Bar Lavi, 1998 U.S.Dist. LEXIS 917, 1998 WL 43221
(S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..     20
Marvullo v. Gruner & Jahr, 105 F.Supp.2d 225 (S.D.N.Y. 2000) . . . . . . . . . . . . . .     20, 21
Matusovsky v. Merrill Lynch, 186 F.Supp. 2d 397 (S.D.N.Y. 2002) . . . . . . . . .     4, 8
Merchant v. Levy, 92 F.3d 51 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15

Netzer v. Community Graphics Assocs., 963 F.Supp. 1309 (S.D.N.Y. 1997). . . . .     15

Newsome v. Brown, 2005 U.S.Dist. LEXIS 4088 (2d Cir. 2006). . . . . . . . . . . . . . . .     16

Pamfiloff v. Giant Records, 794 F.Supp. 933 (N.D. Cal. 1992). . . . . . . . . . .. . . . . .     13

Polsby v. St. Martin's Press, 2000 U.S.Dist. LEXIS 596, 2000 WL 98057
(S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..     22-24

Polsby Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.,
1997 U.S.Dist. LEXIS 3623 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     23

Price v. Fox Entm't Group, Inc., 2007 U.S.Dist. LEXIS 6081 (S.D.N.Y. 2007) . . . .     16, 17

R & R Recreation Products, Inc. v. Joan Cook, Inc., 1992 U.S.Dist. LEXIS 5176
(S.D.N.Y. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.,
118 F.3d 955 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,
211 F.3d 21 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . .     11, 12

Weber v. Geffen Records, Inc., 63 F.Supp.2d 458 (S.D.N.Y. 1999). . . . . . . . . . . . . . .     15

World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 425 F.Supp.2d 484
(S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .     4, 8

**Statutes Cited:**

Federal Rules of Civil Procedure, Rule 8(a)(2) ……………………… .......................    21

Federal Rules of Civil Procedure, Rule 12 ……………………… .................................    1, 7

17 U.S.C. § 505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1, 21

17 U.S.C. § 507(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

**Treatises Cited:**

3-10 Melville B. Nimmer, <u>Nimmer on Copyright</u> Section 10.03 (2007) .. . . . . . . .    11

This memorandum of law is submitted in support of the motion by defendants Taco Tunes, Inc. ("Taco Tunes"), Ramones Productions, Inc. ("Ramones Productions"), the John Family Trust (incorrectly named in the complaint as the Estate of John Cummings), Herzog & Straus and Ira Herzog (the "Moving Defendants") seeking dismissal of the amended complaint ("Amended Complaint") in its entirety pursuant to Rule 12 (b)(1) and (6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. Should Defendants prevail on this motion they seek the award of legal fees pursuant to the terms of 17 U.S.C. § 505.

### Preliminary Statement

This copyright infringement lawsuit is wholly without merit. Plaintiff alleges that defendants Ramones Productions and Taco Tunes, while having the right to exploit six musical compositions (the "Compositions") for traditional commercial exploitation in the form of records and record derivatives (cassettes, tapes, etc.), allegedly overstepped their contractual rights by exploiting recordings of these works in digital formats through internet sites run by defendants Wal-Mart Stores, Inc., Apple, Inc. and RealNetworks, Inc. The naming of those defendants, who have had no contact with Plaintiff and have clearly done nothing wrong, is a transparent attempt by Plaintiff to pressure Ramones Productions and Taco Tunes, to whom Wal-Mart Stores, Inc., Apple, Inc. and RealNetworks, Inc. look for indemnification, into acquiescing to Plaintiff's baseless demands. Defendants will not, however, succumb to such pressure where, as here, Plaintiff's allegations are factually and legally untenable.

Plaintiff's claim of infringement flies in the face of contractual rights which Plaintiff granted Taco Tunes and Ramones Productions, *over twenty years ago*, to exploit Plaintiff's compositions

1

(and recordings) in any and all media, *now or hereafter known* – not as Plaintiff falsely contends, only in physical goods. By Plaintiff's own admission, Taco Tunes has commercially exploited the Compositions for more than two decades pursuant to a written agreement signed by Plaintiff appointing Taco Tunes as the publisher/owner of Plaintiff's works. At a minimum, this written agreement is fatal to plaintiff's claims.

Given this twenty year history, in which Taco Tunes has acted as the owner of the Compositions in accordance with the parties' agreement, Plaintiff's claims are also barred by the applicable statute of limitations and the doctrines of laches, estoppel and implied consent.

Plaintiff's Amended Complaint is also infirm because it seeks to litigate in this Court the same issues which have been raised in two other courts over a four and a half year period and which are now pending in an action brought by plaintiff in the New York Supreme Court, County of New York ("New York Action"). In the New York Action, Plaintiff has sued the Moving Defendants to recover music publishing income allegedly wrongly collected by Taco Tunes in connection with the same compositions that are the subject of this federal action. The proper venue for the adjudication of Plaintiff's allegations concerning these works is where Plaintiff's prior action is pending – the New York State Supreme Court.

Similarly defective, as a matter of pleading, is the second claim of the Amended Complaint accusing the John Family Trust, Herzog, Herzog and Straus and Ramones Productions of "contributory infringement." No allegations have been asserted that any of these parties had knowledge of, induced or materially participated in any alleged copyright infringement by others.[1]

---

[1]     The late John Cummings, professionally known as Johnny Ramone, was a founding member of The Ramones. (Amended Cplt. ¶ 10). Ira Herzog is an accountant whose former firm

A claim for contributory infringement is, therefore, precluded as a matter of law.

Allegations of the Amended Complaint

The Parties

Plaintiff "was a member of the iconic punk band, The Ramones" from 1983-1987. (Amended Cplt., Preliminary Statement, attached as Exhibit A to the accompanying affidavit of Stewart Levy ("Levy Aff.")). During his "tenure with The Ramones," Plaintiff allegedly wrote, and is the sole author of, the six Compositions at issue here. (*Id.* ¶¶. 13-14).[2]

Defendant Ramones Productions Inc. allegedly manages the "intellectual property" rights of The Ramones. (Amended Cplt. ¶ 9). Defendant Taco Tunes, Inc. is a music publisher that has exploited for over twenty (20) years the musical compositions written by The Ramones and Plaintiff. (Amended Cplt. ¶¶ 8, 19-21). According to the Amended Complaint, Ramones Productions and Plaintiff are parties to a recording agreement with Plaintiff, pursuant to which Ramones Productions "engage[d] Plaintiff to record with The Ramones. . . ." (*Id.* ¶ 15; Agreement between Plaintiff, Ramones Productions and Taco Tunes, dated August 1, 1984 (the "1984 Agreement"), attached as

---

was Herzog and Straus. (*Id.* ¶¶11 & 12). There is no allegation that these defendants had anything to do with the alleged infringement of the Compositions by Taco Tunes beyond the Amended Complaint's conclusory statement that they directed "the policies, activities and operations of Taco Tunes." (*Id.* ¶ 32).

2 Significantly, three of the Compositions, "Human Kind," "I'm Not Jesus" and "I Know Better Now," were copyrighted by Taco Tunes as the copyright claimant *(e.g.,* owner) in the 1980s. (Levy Aff. Exhibit B). Plaintiff did not file registrations of his own for these songs or for the remaining three Compositions, "Smash You," "Somebody Put Something in My Drink," and "Can't Say Anything Nice," until twenty years later. Plaintiff filed registration applications for the latter three songs on September 20, 2007, one day prior to the commencement of this litigation. Plaintiff filed registration applications for the three Compositions already copyrighted by Taco Tunes **after** the commencement of this action. (Admissions by Plaintiff's counsel at preliminary conference on November 27, 2007, and Amended Cplt. ¶15 ).

3

Exhibit F to the Levy Aff.[3][4]).

### The 1984 Agreement and The Alleged Infringement

In 1984, Ramones Productions hired Plaintiff "for the purpose of making master recordings embodying the performances of The Ramones." (1984 Agreement ¶ 2; Amended Cplt. ¶ 16).[5]

Although the bulk of the 1984 Agreement deals with Plaintiff's services as a recording artist, the agreement also contains numerous provisions granting Ramones Productions and Taco Tunes the right to exploit musical compositions written or co-written by Plaintiff, in exchange for royalty payments related to the exploitation of such works, and appoints Taco Tunes as the publisher of these works. (1984 Agreement ¶ 10). Indeed, Taco Tunes (and not just Ramones Productions) is a party to this agreement, although Plaintiff has omitted this important fact from his Amended Complaint. (*Id.*). Paragraph 10(c) of the 1984 Agreement provides that Taco Tunes is to be the

---

3    Plaintiff has failed to provide this Court with a copy of the 1984 Agreement, presumably because this document dooms his claim. However, this Court can rely on the 1984 Agreement on this motion to dismiss, as Plaintiff references this document throughout his Amended Complaint. *See, e.g., Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (on a motion to dismiss for failure to state a claim upon which relief can be granted, "a court may consider documents . . . that are integral to, or explicitly referenced in, the pleading"); *see also* Cplt. ¶¶ 16-17, 19. This Court also may take judicial notice of the document, as Plaintiff previously submitted it to the New York Supreme Court and the federal district court in California. *See* Exhibit F to the Levy Aff.and Levy Aff. ¶¶ 5, 6,7 and 9; *Faulkner v. Verizon Communications, Inc.*, 156 F.Supp.2d 384, 391 (S.D.N.Y. 2001)(courts may take judicial notice of pleadings in other lawsuits which are a matter of public record."); *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 425 F.Supp.2d 484, 508 n. 16 (S.D.N.Y. 2006) (federal courts may consider proceedings in state court actions if those proceedings directly relate to the case before the federal court.).

4    It is significant that while Plaintiff claims to be the sole author of the Compositions, Exhibit B to the 1984 Agreement specifies that  at least with respect to the song, "Smash You," Plaintiff co-wrote it with Dee Dee Ramone (real name – Douglas Colvin), who was a member of The Ramones.

5    The 1984 Agreement defines "Master" (and, therefore "master recording" as well)

4

publisher (owner) of Plaintiff's compositions and will exploit them accordingly:

> Publisher [Taco Tunes], which is a signatory to this Agreement, agrees to accord Artist credit as a writer for each Controlled Composition[6] on all copies of records recorded hereunder . . . Publisher further warrants and represents that it distributes to the members of the Ramones all sums received by it in respect of their compositions without any deductions and that such distributions are pro-rated according to each songwriter's contribution to the composition. *Publisher agrees that the Controlled Compositions delivered by Artist hereunder will be exploited by Publisher in the foregoing manner and that Publisher will pay Artist all sums received by it from its exploitation of the Controlled Composition . . . .* Artist agrees, upon delivery of Controlled Compositions, to inform Publisher of the percentage of his contribution to the creation of such compositions.

(1984 Agreement ¶ 10(c)) (emphasis added).

In addition, Paragraph 10(a) provides that "Controlled Compositions included on records recorded hereunder *are hereby licensed to Company* [Ramones Productions] at the applicable royalty rate and on the same basis provided in the Record Contract [between Ramones Productions and SIRE Records, the record label to which The Ramones were signed]." (1984 Agreement ¶¶ 10(a) and 1(h)) (emphasis added).

Plaintiff admits in his Amended Complaint that he granted to Ramones Productions in that agreement "the limited right [sic] create physical sound recordings embodying the Compositions." (Amended Cplt. ¶ 19). Plaintiff also admits that "Defendant Taco has exploited the Compositions continuously for more than twenty (20) years," and "has and continues to hold itself out as the publisher of the Compositions," and has "collected royalties and other fees attributable to the Compositions" for these two decades. (*Id.* ¶¶ 20-21).

---

as the "single sided recording embodying the performance by "The Ramones." (¶1(b)).

6    "Controlled Composition" is defined in the 1984 Agreement as any "composition, written or composed, in whole or in part" by plaintiff either listed on Exhibit B of the 1984 Agreement or created under the Agreement. (1984 Agreement ¶¶ 1(f) and 10(a)). Accordingly, the Compositions alleged to have been infringed by defendants are indisputably Controlled

Ignoring the above terms of the 1984 Agreement and the parties' twenty (20) year history, Plaintiff now alleges that Taco Tunes has infringed his compositions by exploiting them in digital (as opposed to physical) form through defendants Apple, Inc., RealNetworks, Inc. and Wal-Mart Stores, Inc. (the "Digital Defendants") (*Id.* ¶ 21) because the parties allegedly never signed a separate publishing agreement, as contemplated by the 1984 Agreement. Specifically, according to Plaintiff, "[a]lthough the Recording Agreement contemplates a music publishing agreement between Plaintiff and Taco, the parties never agreed to terms, and no agreement was ever completed." (*Id.* ¶ 17). Plaintiff further alleges that "Plaintiff has never authorized the [exploitation] of the Compositions in any non-physical format or other non-physical configuration." (*Id.* ¶ 19).

Contrary to Plaintiff's allegations, however, numerous provisions of the 1984 Agreement make clear that Plaintiff granted both Ramones Productions and Taco Tunes the right to exploit Plaintiffs recordings and compositions in any and all media, whether known or unknown in 1984, and not just in traditional physical goods. Thus, "records" as used in Paragraph 10, above, is defined in the Agreement to include "all forms of reproductions including pre-recorded tapes and discs and electronic video recordings, *now or hereafter known . . . .*" (1984 Agreement ¶ 1(d)) (emphasis added). Similarly, paragraph 5(a) of the Agreement provides that Ramones Productions will have the right to commercially exploit "in any or all fields of use, *by any method now or hereafter known*" the recordings (also known as "masters") made under the 1984 Agreement. (1984 Agreement ¶ 5(a)) (emphasis added). There is, therefore, simply no basis for the arbitrary distinction Plaintiff is attempting to draw between traditional, physical "records" and digital formats of those recordings.

---

Compositions.

Plaintiff's Litigious Filings Against The Moving Defendants

This action is the latest in a series of complaints filed by Plaintiff during the past four and a half years against the Moving Defendants, but the first one to allege infringement. Plaintiff's prior complaints all have alleged that Taco Tunes and Ramones Productions under-reported royalties due to Plaintiff from exploitation of his compositions pursuant to the terms of the 1984 Agreement. Plaintiff withdrew the first such complaint which he filed in August 2003 in the United States District Court for the Central District of California (which, significantly, did not raise the issue of copyright infringement) and Plaintiff has one such action now pending in the New York Supreme Court for the County of New York entitled *Reinhardt v. Cummings et al*, Index No. 04/601064. (Copies of the complaint and amended complaint in the "New York State Action" and the complaint in the California action are annexed as Exhibits C, D, and E to the Levy Aff.). A motion to dismiss the New York Action is currently pending. (Levy Aff. ¶ 6).

## Argument

### I

### THE STANDARD OF REVIEW

The standard for dismissal is set forth in this Court's decision in *Arista Records LLC v. Lime Group LLC*, 2007 U.S. Dist. LEXIS 88449 (S.D.N.Y. 2007), which held that a complaint may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." (*citing Bell Atlantic v. Twombly*, 2007 U.S.LEXIS 5901, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). *Twombly* requires that a party bringing a claim satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). A party's "obligation to provide the grounds of his

entitlement to relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (internal quotation marks and alteration omitted). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).

In addition, where a document is integral to or explicitly referenced in a pleading, and "plaintiff's allegations are contradicted by such a document those allegations are insufficient to defeat a motion to dismiss." *Matusovsky*, 186 F. Supp. 2d at 400. The 1984 Agreement is such a document. This Court also may take judicial notice of the 1984 Agreement, which Plaintiff attached as an exhibit to his original and amended complaint in the New York State Action, and in his federal district court action in California. *See* Levy Aff. ¶¶ 5, 6, 7 and 9 and Exhibit G; *Falkner,* 156 F. Supp.2d at 391 (courts "may take judicial notice of pleadings in other lawsuits attached to the defendants' motion to dismiss… as a matter of public record."); *World Wrestling Entertainment,* 425 F. Supp.2d at 508 n. 16 (citing with approval the Seventh Circuit Court of Appeals holding in *Green v. Warden, U.S. Penitentiary,* 699 F.2d 364, 369 (1983) that "Federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.").

## II

## BECAUSE PLAINTIFF EXPLICITLY GRANTED RAMONES PRODUCTIONS AND TACO TUNES THE RIGHT TO COMMERCIALLY EXPLOIT THE COMPOSITIONS IN ALL MEDIA, KNOWN OR UNKNOWN, PLAINTIFF CANNOT MAINTAIN AN ACTION FOR COPYRIGHT INFRINGEMENT BASED ON THE DIGITAL EXPLOITATION OF THESE WORKS

Plaintiff's claims of copyright infringement are refuted by the clear language of the 1984

8

Agreement. The simple fact is that Plaintiff expressly granted to Ramones Productions and Taco Tunes the right to exploit the Compositions, digitally and otherwise, by all means now known or hereafter devised.

Plaintiff does not contest the validity of the 1984 Agreement. Instead, he argues that the 1984 Agreement granted Ramones Productions only "the limited right [sic] create physical sound recordings embodying the Compositions." (Amended Cplt. ¶ 19). Contrary to this false allegation, Plaintiff clearly granted Ramones Productions and Taco Tunes the right to exploit the Compositions allegedly written by Plaintiff in any and all media, now or hereafter known.

*First*, as set forth above, Paragraph 10(a) of the 1984 Agreement states that "Controlled Compositions included on *records* recorded hereunder are licensed to Company [Ramones Productions] at the applicable royalty rate and on the same basis provided in the Record Contract." (1984 Agreement ¶ 10(a)). "Records" in turn is defined in the agreement as "all forms of reproduction... now or hereafter known." (*Id.* ¶ 1(d)).

If that were not enough, Paragraph 10(c) makes clear that (i) Taco Tunes, an express "signatory to the agreement," will act as the "Publisher" for Plaintiff's compositions and will afford Plaintiff "credit as a writer for each Controlled Composition on all copies of *records* recorded hereunder; (ii) "the Controlled Compositions delivered by Artist hereunder will be exploited by Publisher;" and (iii) "Publisher will pay Artist all sums received by it from its exploitation of the Controlled Compositions." (Agreement ¶ 10(c)).

Paragraph 5(a) further clarifies matters when it states that Ramones Productions and its licensees and assigns are authorized to commercially exploit the Masters "in any or all fields of use, *by any method now or hereafter known,* upon such terms and conditions as Company [Ramones

Productions] or its licensees may elect or, in their sole discretion, to refrain therefrom...."
(Agreement ¶ 5(a)).

The above provisions, referring as they do to all forms of reproduction "now or hereafter known," plainly cover the digital exploitation at issue here. *See*, *e.g.*, *Batiste v. Island Records Inc.*, 179 F.3d 217, 223 (5th Cir. 1999) (plaintiff's grant of rights relating to the copyright in a musical composition, "in any or all fields of use, by any method now or hereafter known, throughout the world" held sufficiently broad to include licensing of a record containing a digital sample of the composition); *Boosey & Hawkes Music Publishers v. Walt Disney Co.*, 145 F. 3d 481, 486 (2d Cir. 1998) (holding that grant by publisher of Igor Stravinsky's music permitting Walt Disney to record the compositions "in any manner, medium or form" in the film "Fantasia" permitted Walt Disney to use the compositions in the videocassette version of the film even though the grant contained no other provision permitting the use in "future technologies."); and *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 572, 750 N.Y.S.2d 565, 571 (2002) (holding that the owner of recordings by the group The Ronettes had the right to commercially exploit the recordings in new markets and mediums where agreement stated that Defendants rights extended to reproductions "by any method now or hereafter known.").

Following this established precedent, this and other Courts have held that a license to use copyrighted materials in the sale of records includes the right to digitize those materials to sell over the internet. *See*, *e.g.*, *Chambers v. Time Warner, Inc.*, 123 F. Supp.2d 198, (S.D.N.Y. 2000) (holding that where recording agreement granted rights to exploit works "by any method now known, or hereafter to become known' or words to that effect," recording agreement authorized exploitation in digital form), *rev'd and remanded on other grounds*, 282 F.3d 147 (2d Cir. 2002);

10

*Allegro Corp. v. Only New Age Music, Inc.*, 2002 U.S. DIST. LEXIS 27449 (D. Ore. 2002) (same). The language of the 1984 Agreement clearly encompasses and permits the use of the Compositions in digital form for sale over the internet and otherwise. Plaintiff's claims of copyright infringement are, therefore, without basis.

## III

### IN THE ALTERNATIVE, SINCE A LICENSE TO COMMERCIALLY EXPLOIT THE MASTERS IN ALL MEDIA, KNOWN OR UNKNOWN, IS REASONABLY IMPLIED, PLAINTIFF CANNOT MAINTAIN AN ACTION FOR COPYRIGHT INFRINGEMENT

Even if Plaintiff's grant of rights to exploit the Compositions in any media or form is not found to be expressly contained in the 1984 Agreement (and it is), such licenses are reasonably implied from the parties' conduct. The lack of an executed songwriter's agreement between the relevant parties is irrelevant to such a conclusion. While Courts in this District have held that exclusive licenses must be conveyed in writing, "nonexclusive license[s] may be granted orally, or may even be implied from [the parties'] conduct." *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) *quoting I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (alterations added); *see also* 3-10 <u>Nimmer on Copyright</u> § 10.03 (2007) (". . . nonexclusive licenses may therefore be granted orally, or may even be implied from conduct. When the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license."). Once an implied nonexclusive license to use copyrighted material is granted, the copyright owner "waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). According to the Second Circuit Court of Appeals, implied licenses are found in circumstances "where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.'" *Smithkline Beecham Consumer Healthcare, L.P. v. Watson*

11

*Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000) (*quoting Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990)).

That is clearly the case here where Plaintiff was hired to be a contract musician with The Ramones and, as part of his employment, delivered his Compositions to The Ramones to be recorded and included in The Ramones' albums. Plaintiff has admitted that he did grant Ramones Productions a license to exploit his Compositions in physical form. Plaintiff, however, inexplicably contends that his admitted authorization does not extend to digital uses. This contention is belied entirely by the 1984 Agreement. Paragraph 5(a) of the 1984 Agreement makes clear that the entire purpose of the 1984 Agreement is to permit Ramones Productions and its licensees and assigns to commercially exploit the Masters "in any or all fields of use, by any method now or hereafter known. . . ." (1984 Agreement ¶ 5(a)). This paragraph further grants to:

> Company [i.e., Ramones Productions] and its licensees...the sole and exclusive right to use the Master [i.e.,defined in paragraph 1(b) as the recordings embodying plaintiff's performances made under the terms of the Agreement] throughout the Territory or any part thereof *in any manner they [Ramones Productions] see fit*, including, without limitation, the sole and exclusive right in perpetuity and throughout the Territory:
>
> > (a) to manufacture, advertise, sell, distribute, lease, license or otherwise use or dispose of the Masters and phonograph records embodying the Masters, *in any or all fields of use, by any method now or hereafter known,* upon such terms and conditions as Company or its licensees may elect or, in their sole discretion, to refrain therefrom;
> >
> > (b) to perform the Masters publicly and to permit the public performance thereof by means of radio broadcast, television broadcast or *any other method now or hereafter known;....*

(1984 Agreement ¶ 5) (emphasis added).

By this language, Plaintiff unequivocally granted Ramones Productions all rights needed to exploit Plaintiffs' recordings in any form and by any method, including, but not limited to, the

internet usage of which Plaintiff now complains.  In these circumstances, it would be untenable to suggest, as Plaintiff does here, that Plaintiff can block this clear grant by claiming that Ramones Productions lacks a license to use the Compositions that underlie these same recordings.  In *Pamfiloff v. Giant Records*, 794 F. Supp. 933, (N.D. Ca. 1992), a case strikingly similar to the one at bar, a District Court held that a recording agreement that transferred copyright ownership in a sound recording to a proxy necessarily included an implied non-exclusive license for that party to use the musical composition embodied on that recording.  The Court reasoned that "such an agreement would be worthless to [the sound recording owners] if they were prevented from using the recordings because they did not have permission to use the underlying musical compositions." *Id*. at 938.  The same reasoning applies to the case at bar, mandating dismissal of Plaintiff's complaint.

Here, moreover, it is beyond dispute that in paragraph 10(b) of the 1984 Agreement, Plaintiff promised Taco Tunes that he would:

> enter into a Songwriter's Agreement with Publisher [Taco Tunes] with respect to each Controlled Composition included on records recorded hereunder. The Songwriter's Agreement will be in the same form and contain the same terms as the Songwriter's Agreement currently in effect between the members of the Ramones and Publisher, a copy of which is attached hereto as Exhibit C.

(1984 Agreement ¶ 10(b)).

While the Complaint alleges that a separate Songwriter's Agreement was never executed (Amended Cplt. ¶ 17), the parties clearly contemplated and set forth in writing the conveyance of plaintiff's publishing rights in his Controlled Compositions to Taco Tunes.  Thus, even in the absence of paragraph 10(c) of the 1984 Agreement (in which the parties agreed that Taco Tunes would exploit Plaintiff's Compositions in exchange for royalty payments to Plaintiff), paragraph 10(b) makes clear that Taco Tunes was authorized to exploit Plaintiffs' work, irrespective of whether

13

that authorization was formalized in a subsequent writing, as the parties always intended. In these circumstances, an implied license plainly exists sufficient to immunize defendants from this spurious infringement claim.

## IV

### SINCE PLAINTIFF HAS FOR OVER TWENTY YEARS KNOWINGLY ACQUIESCED IN TACO TUNES' OWNERSHIP AND EXPLOITATION OF THE COMPOSITIONS, THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND THE DOCTRINES OF LACHES, ESTOPPEL AND IMPLIED CONSENT

Plaintiff's amended complaint, vague as it is concerning the time period of the allegedly infringing conduct, clearly admits that defendant Taco Tunes "has exploited the Compositions continuously for more than twenty (20) years, and has and continues to hold itself out as the publisher of the Compositions." (Amended Cplt. ¶ 20). While Plaintiff states that he "never authorized" the exploitation of the Compositions "in any non-physical digital format or any other non-physical configuration," (*id.* ¶ 19), the converse of that statement is a further admission that he *did* authorize such exploitation in physical formats. Thus, Plaintiff, by his own admissions, has either known about and acquiesced in Taco Tunes' ownership of the Compositions and its "authorize[ing] third parties to use the Compositions" (*id.* ¶ 20) or he has waited too long to now belatedly object to Taco Tune's conduct. Either way, Plaintiff's amended complaint is barred by the applicable statute of limitations and precluded by the doctrines of laches, estoppel and implied consent.

<u>Statute of Limitations</u>

Plaintiff's copyright infringement claims are time barred under the Copyright Act's three-year statute of limitations. 17 U.S.C. § 507(b). Plaintiff admits in his Amended Complaint that Taco Tunes has held itself out as the owner/publisher of the Compositions for 20 years, allegedly in

14

"blatant contravention of Plaintiff's sole ownership" of these works (Amended Cplt. ¶20), and it is undisputed that Taco Tunes has obtained copyright registrations as the owner of three of these works. Nor can Plaintiff deny that in August 2003 he commenced litigation against, among others, Taco Tunes, relating to, among things, his songwriting credit, but did not raise the issue of copyright infringement. (*See* complaint in California action annexed to Levy Aff. As Exhibit E) Because the gravamen of Plaintiff's claim is that he (and not Taco Tunes) is the owner of these works (*see, e.g., Plaintiff's* prayer for relief seeking a declaration of sole ownership), Plaintiff was required to bring his claim within three years of when his claims accrued. *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) ("plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such declaration."); *Barksdale v. Robinson*, 211 F.R.D. 240, 244 (S.D.N.Y. 2002).[7] Plaintiff's time to challenge Taco Tunes' conduct expired years before he filed this suit, and, accordingly, Plaintiff's infringement claims should be dismissed.

Laches

The doctrine of laches embodies the concept that "equity aids the vigilant, not those who sleep on their rights." *Ivani Contr. Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).

---

[7]    *See also DeCarlo v. Archie Comic Publ'ns, Inc*, 127 F. Supp. 2d 497, 507 (S.D.N.Y. 2001) (three-year statute barred plaintiff's claim for sole ownership of comic book character "Josie," where plaintiff "has known for many years that [defendant] claimed ownership of the Josie characters, including the rights to license motion pictures, merchandise, and other uses"); *Weber v. Geffen Records, Inc.*, 63 F. Supp.2d 458, 465-67 (S.D.N.Y. 1999) (same result as *DeCarlo*, where, more than three years before filing, plaintiff knew that former bandmates had released song and had filed copyright registration without crediting plaintiff); *Netzer v. Community Graphic Assocs.*, 963 F. Supp. 1308 (S.D.N.Y. 1997) (plaintiff's claim for co-ownership of comic book barred, where plaintiff had received copy of comic book bearing inscription noting its copyright to another many years before he filed suit).

This Court has recognized on multiple occasions the availability of the defense of laches in copyright infringement actions. *See Newsome v. Brown*, 2005 U.S. Dist. LEXIS 4088, *21-22 (S.D.N.Y. 2005), *aff'd*, 209 Fed. Appx. 11, 2006 U.S.App. LEXIS 30979 (2d Cir. 2006) ("To prevail on laches grounds, a party must demonstrate the following elements. First, there must be a delay in filing suit. Second, this delay must be unreasonable or inexcusable. Third, the delay must cause prejudice to the defendant.") (citations omitted); and *Byron v. Chevrolet Motor Div. of Gen. Motors Corp.*, 1995 U.S. Dist. LEXIS 11115, *17-20 (S.D.N.Y. 1995) ("The Second Circuit on many occasions has applied laches to bar or restrict copyright infringement claims in their entirety . . . Where the delay is longer than the statute of limitations, a presumption of unreasonable delay arises that plaintiff must overcome by proving the absence of prejudice to the defendant from the passage of time.").

In this case, plaintiff has sat on his rights for over two decades and only first raised the allegation of copyright infringement in this lawsuit filed in 2007. During that time, defendant Taco Tunes has asserted ownership and control over the Compositions by "exploit[ing] the Compositions continuously for more than twenty (20) years" and "hold[ing] itself out as the publisher of the Compositions." (Amended Cplt. ¶ 20). Had Plaintiff asserted his purported rights earlier, defendants Taco Tunes and Ramones Productions would have had an opportunity to refrain from exploiting these works digitally, rather than face an unexpected lawsuit from the Plaintiff over twenty years later. In this regard, defendants have been severely prejudiced by Plaintiff's long period of inactivity in connection with his claim to ownership of the Compositions.

Estoppel

Under the doctrine of equitable estoppel, Plaintiff's claims for copyright infringement must also be dismissed. *Price v. Fox Entm't Group, Inc.*, 2007 U.S. Dist. LEXIS 6081 (S.D.N.Y. 2007),

16

sets forth the criteria for a successful estoppel defense.

> In a copyright action, estoppel requires proof that (1) plaintiffs had knowledge of defendants' infringing conduct; (2) plaintiffs intended that defendants rely on plaintiffs' conduct, or plaintiffs acted in such a manner that defendants had a right to believe they were intended to rely on the conduct; (3) defendants were ignorant of the true facts; and (4) defendants did, in fact, rely to their detriment. Defendants may prevail on their estoppel defense only if they can prove a reasonable and justifiable belief that plaintiffs gave them permission to copy.

However, "[t]he defendant who argues express consent need not satisfy the third prong of equitable estoppel, and thus need not be ignorant of the true facts." *Encyclopedia Brown Prods. v. Home Box Office*, 1994 U.S. Dist. LEXIS 21372, *42 (S.D.N.Y. 1994).

Plaintiff expressly consented in the 1984 Agreement to the commercial exploitation of his recordings and Compositions by Ramones Productions in all formats. The conduct of the parties since the creation of the Compositions (highlighted by Plaintiff's inactivity for over twenty years) and the express terms of the 1984 Agreement, clearly evidence that, as a matter of law, Defendants Ramones Productions and Taco Tunes held a reasonable belief that Taco Tunes was the owner of the Compositions and that they were authorized to sell recordings of The Ramones (including the underlying compositions) through such entities as co-defendants Wal-Mart Stores, Inc., Apple, Inc. and RealNetworks, Inc. Plaintiff has admitted knowing of Taco Tunes' acts for twenty years and, as explained above, Taco Tunes relied on Plaintiff's conduct to its detriment (*e.g.*, being sued now). As such, Plaintiff should be estopped from raising his baseless infringement claims in this Court.

Implied Consent

The legal analysis for implied consent is virtually identical to that with respect to equitable estoppel. *See Price*, 2007 U.S. Dist. LEXIS 6081, *16; and *Encyclopedia Brown Prods.*, 1994 U.S. Dist. LEXIS 21372 at *41 (S.D.N.Y. 1994).

Plaintiff's conduct in signing the 1984 Agreement and offering no objection for twenty (20)

17

years to the defendants' commercial exploitation of the recordings and Compositions must, at the very least, result in implied consent for Ramones Productions and Taco Tunes to do so. Given the allegations of Plaintiff's Amended Complaint and the fact that Plaintiff is currently suing Taco Tunes in New York Supreme Court for breach of the 1984 Agreement (for failure to pay royalties for use of the Compositions under that agreement), there can be no dispute, as a matter of law, that Plaintiff consented to defendant Taco Tunes' administration and ownership of the Compositions for over twenty (20) years without objection.

V

### THIS ACTION SHOULD BE DISMISSED IN LIGHT OF PLAINTIFF'S PENDING STATE COURT ACTION FOR UNDERPAYMENT OF ROYALTIES OWED FOR EXPLOITATION OF THE COMPOSITIONS

Plaintiff's grievance, to the extent he has one, is that he has been underpaid monies allegedly due him pursuant to the terms of the 1984 Agreement, not that his musical compositions have been infringed by the defendants in this action. As a result, this Court does not have subject matter jurisdiction over this action between non-diverse parties. Jurisdiction lies, on the contrary, in the New York Supreme Court where Plaintiff has pending an action against the Moving Defendants seeking, among other things, damages for the defendant's "wrongful collection and retention of Plaintiff's funds" due to him pursuant to the terms of the 1984 Agreement. (*see* Amended New York State Complaint at n.1, a copy of which is annexed to the Levy Aff. as Exhibit D). Plaintiff's action before this Court is, therefore, misplaced and should be dismissed or, at a minimum, stayed.

While Plaintiff in his amended New York State court complaint seeks to distinguish that case from the one at bar by arguing that the State action does not relate "to the underlying acts of copyright infringement," (*id.*) Plaintiff's own language in his State complaint belies that argument.

18

Specifically, in paragraph 14 of Plaintiff's amended State complaint he alleges that the defendants "have continuously collected revenues attributable to Plaintiff's work. *These revenues reflect royalties attributable to ... Mr. Reinhardt's music publishing income, wrongly collected by Taco Tunes.*" (*Id.* ¶ 14) (emphasis added).

Plaintiff cannot bring an action before this Court accusing the same defendants of infringing his copyrights when he has a pending action suing Taco Tunes for wrongfully collecting publishing income generated by those very same works. To permit this action to proceed would be to allow Plaintiff to recover twice for the same injury. *See Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 720 (2d. Cir. 1992) (The Second Circuit noted that the plaintiff could not receive "double recovery where the damages for the copyright infringement and trade secret misappropriation are coextensive."); *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317 (Fed. Cir. 2003) (The Federal Circuit held that there could be no double recovery where "the breach of contract damages arose from the same copying and included the same lost sales that form the basis for the copyright damages."); *see also Graham*, 144 F.3d at 238 n.4 (2d Cir. 1998) ("any contract damages representing actual copyright damages must be subtracted from the final copyright award to avoid double recovery"); *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 969-70 (2d Cir. 1997) (affirming district court's disallowance of double recovery on copyright infringement and misappropriation of trade secrets claims).

**VI**

**SINCE PLAINTIFF HAS FAILED TO ALLEGE WITH ANY PARTICULARITY THAT DEFENDANTS CUMMINGS, RAMONES PRODUCTIONS, HERZOG OR HERZOG AND STRAUSS HAD KNOWLEDGE OF, INDUCED OR MATERIALLY PARTICIPATED IN THE ALLEGEDLY INFRINGING CONDUCT OF OTHERS, THOSE DEFEDNANTS CANNOT BE FOUND LIABLE FOR CONTRIBUTORY INFRINGEMENT**

As a threshold matter, in order to adequately plead a claim for contributory infringement, a plaintiff "must initially plead a direct infringement." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 229-230 (S.D.N.Y. 2000); *see R & R Recreation Products Inc. v. Joan Cook, Inc.*, 1992 U.S. Dist. LEXIS 5176, 25 U.S.P.Q.2D (BNA) 1781, 1784 (S.D.N.Y. 1992) ("Without the fact or intention of a direct infringement there is no cause of action for contributory [copyright] infringement."). Plaintiff's first claim against all the defendants is stated as being one for copyright infringement even though no specific allegedly infringing actions are attributed to defendants Herzog, HS, Ramones Productions or Cummings. Plaintiff's second claim for contributory infringement against Cummings, Herzog, HS and Ramones Productions is similarly bereft of any allegations that said defendants "had actual or constructive knowledge of, and participated in" any allegedly infringing conduct." *Marvullo*, 105 F.Supp.2d at 230; *Livnat v. Shai Bar Lavi*, 1998 U.S. Dist. LEXIS 917, *8-9, 1998 WL 43221, at *3 (S.D.N.Y. 1998) (internal quotation marks and citations omitted) ("In order for liability to be imposed, the alleged contributory infringer must make more than a mere quantitative contribution to the primary infringement. Participation in the infringement must be substantial. The authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer.").

In this case, Plaintiff merely asserts in conclusory fashion that defendants Cummings,

20

Ramones Productions, Herzog and his accounting firm directed "the policies, activities and operations of" Taco Tunes (Amended Cplt. ¶ 32), without offering any factual support for such statement. In particular, the Amended Complaint is devoid of any allegations that Cummings, Ramones Productions, Herzog and his accounting firm participated in any way in the alleged infringement. The Amended Complaint's self serving, unsubstantiated and conclusory allegations do not support a claim of contributory infringement nor do they meet the minimum pleading requirements of Federal Rule 8(a)(2). *See Marvullo*, 105 F. Supp. 2d at 230 ("Rule 8(a)(2) [of the Federal Rules of Civil Procedure] has been construed to require a plaintiff to plead with specificity the acts by which a defendant has committed copyright infringement [or contributory infringement];" *citing Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992) ("A . . . copyright infringement claim must allege . . . by what acts during what time the defendant infringed the copyright" and  a valid claim for infringement "must set out the particular infringing acts . . . with some specificity. Broad, sweeping allegations of infringement do not comply with Rule 8."). No cognizable claim of contributory copyright infringement has, therefore, been pled in this case.

## VII

### THE PREVAILING PARTY IN A COPYRIGHT INFRINGEMENT CASE IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

Section 505 of the Copyright Act (17 U.S.C. Section 505) provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . .  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the cost.

The United States Supreme Court has provided a list of non-exclusive factors that a court may consider in determining whether a prevailing party should receive an award of attorneys' fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal

components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogarty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994), *Crescent Publ'g Group, Inc. v. Playboy Enters.*, 246 F.3d 142, 147 (2d Cir. 2001) ("the standard governing the award of attorneys' fees is identical for prevailing plaintiffs and prevailing defendants"); *See also Kroll-O'Gara Co. v. First Defense Int'l, Inc.*, 2000 U.S. Dist. LEXIS 4549, *3 (S.D.N.Y. 2000) ("the prevailing view is that 'although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely.'") (internal citations omitted).

Courts in this District have routinely awarded attorneys' fees in cases where the plaintiff has made patently unreasonable copyright infringement claims.  In *Polsby v. St. Martin's Press*, 2000 U.S. Dist. LEXIS 596, 2000 WL 98057, at  *3 (S.D.N.Y. 2000), this Court awarded costs and fees against a *pro se* copyright plaintiff based, inter alia, "on the objective lack of merit in th[e] case;" *see also Chivalry Film Prods. v. NBC Universal, Inc.*, 2007 U.S. Dist. LEXIS 86889 at *7-9 (S.D.N.Y 2007) ("The complete lack of any reasonable basis for plaintiff's copyright claim thus establishes that his claim was frivolous and objectively unreasonable, and an award of fees and costs is appropriate here.").

Courts have also regularly recognized the need for deterrence against objectively unreasonable copyright claims.  *Chivalry* held that "just as attorney fee awards may chill litigation of close cases, . . . the denial of such awards in objectively unreasonable cases also disserves the purposes of copyright law, by failing to protect the owners of valid copyrights from the cost of frivolous litigation." *Chivalry*, 2007 U.S. Dist. LEXIS 86889 at *8-9 (internal citations omitted). Further, the *Chivalry* Court stated that "the denial of fees and costs to a prevailing defendant in an objectively unreasonable copyright case may spur additional frivolous lawsuits, of exactly the sort

that an award of fees and costs is designed to "chill." *Id, see also Polsby Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.*, 1997 U.S. Dist. LEXIS 3623, at *3 (S.D.N.Y.1999) ("Future litigants should be discouraged from comparable behavior.").

The 1984 Agreement conveyed to Taco Tunes ownership in the Compositions and certainly granted defendants Ramones Productions and Taco Tunes a license to commercially exploit the group's recordings and the Compositions contained on those recordings. A license to exploit the recordings would have been useless absent a license to also allow for the marketing, distribution and performance of the Compositions that are inextricably linked to those works. By virtue of the 1984 Agreement, as well as the conduct of the parties and Plaintiff's failure to disavow Taco Tunes' ownership rights and licensing activities for over twenty (20) years, there can be no plausible conclusion other than defendants Ramones Productions and Taco Tunes have the right to license the use of the Compositions by or in any method known or unknown at the time of the 1984 Agreement, including digital formats. Plaintiff's argument to the contrary is without basis. It is, therefore, well within the Court's discretion to award attorney's fees and costs in this case since Plaintiff's copyright infringement claims are not merely objectively unreasonable, they are frivolous.

The Court should also take notice of the fact that Plaintiff has sued certain of the defendants in this action in several forums over the last four and a half years, disguising his demands for money to which he is not entitled as claims for copyright infringement in this federal court, and breaches of contract, fraud and breaches of fiduciary duty in state court and the California federal court (Exs. A,C, D, and E to the Levy Aff.). Plaintiff's history of litigation against Ramones Productions, Taco Tunes, Cummings, Ira Herzog and Herzog & Straus warrants an award of costs and attorney's fees for the same reasons articulated by this Court in *Polsby*. Specifically, "based on the objective lack of

23

merit in this case, and the apparent need to deter plaintiff's campaign of litigation, some award of costs and fees is appropriate." *Polsby*, 2000 U.S. Dist. LEXIS 596, at *6. Defendants request for attorneys' fees should therefore be granted pursuant to Section 505 of the Copyright Act.

### Conclusion

Plaintiff entered into the 1984 Agreement, an employment agreement, with Ramones Productions and that company's publishing affiliate, Taco Tunes, by which plaintiff transferred to Taco Tunes publishing rights and granted those companies the right to exploit The Ramones' recordings and compositions by any method "now or hereafter known." (Ex. F, para. 5(b). Plaintiff cannot now, more than twenty years after signing the 1984 Agreement, claim that the defendants are prohibited from distributing the Masters and Compositions in digital formats especially where plaintiff expressly agreed to allow Ramones Productions and Taco Tunes to commercially exploit both the Masters and the Compositions by "any method now or hereafter known." Plaintiff's claims for copyright infringement must therefore be dismissed. Alternatively, the doctrines of estoppel, laches and implied consent, as well as the applicable statute of limitations, likewise preclude any portion of plaintiff's amended complaint from being maintained.

Similarly without merit is plaintiff's claim of contributory copyright infringement against defendants Herzog and Cummings. As a matter of law, the failure of Plaintiff to allege that these defendants participated in the alleged acts of infringement bars any such claim.

Plaintiff's amended complaint, if it belongs anywhere, is in the New York State Supreme Court where a similar action against many of the same defendants is pending. Plaintiff's attempt to create a federal claim out of a state breach of contract case should not be tolerated. This Court does not have subject matter jurisdiction over the allegations contained in plaintiff's amended complaint.

Indeed, Plaintiff's history of harassing defendants in the judicial system and the frivolousness of his copyright infringement claim, merit the award of legal fees and costs against him.

For all of the above reasons, the Moving Defendants request that the Court dismiss Plaintiff's amended complaint in its entirety and award legal fees against him.

Dated:    New York, New York
          January 18, 2008

                                        EISENBERG TANCHUM & LEVY
                                        *Attorneys for Defendants Taco Tunes, Inc.,*
                                        *Ramones Productions, Inc., The John Family*
                                        *Trust (incorrectly captioned as the "Estate of*
                                        *John Cummings"), Herzog & Strauss and Ira*
                                        *Herzog*

                                        By: _____
                                            Stewart L. Levy (SLL- 2892)
                                            James E. Doherty (JED -1596)
                                            675 Third Avenue
                                            New York, New York 10017
                                            Tel.# 212-599-0777

Of counsel:   Michael D. Friedman, Esq.        Curtis B. Krasik, Esq.
              Troutman Sanders LLP             Kirkpatrick & Lockhart Preston Gates
              The Chrysler Building            Ellis LLP
              405 Lexington Avenue             Henry W. Oliver Building
              New York, New York               535 Smithfield Street
              10174                            Pittsburgh, Pa 15222-2312


To:    Roberts & Ritholz
       *Attorneys for Plaintiff*
       183 Madison Avenue, Penthouse
       New York, New York 10016
       Tel.#212-448-1800