UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Richard Reinhardt p/k/a Richie Ramone, | : | |
| Plaintiff, | : | |
| -v- | : | 07 CV 8233 (SAS) |
| Wal-Mart Stores, Inc., Apple, Inc., RealNetworks, Inc., Taco Tunes, Inc, Ramones Productions, Inc., | : | **JURY TRIAL DEMANDED** |
| Estate of John Cummings, Herzog & Strauss and Ira Herzog | : | |
| Defendants. | : | |
| | : | |

# MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

ROBERTS & RITHOLZ LLP
183 Madison Avenue, 19th Floor
New York, New York 10016
Tel: (212) 448-1800
Fax: (212) 504-9553
Email: jsanders@robritlaw.com

*Attorneys for Plaintiff*

Of counsel:
    Jeff Sanders, Esq.

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………….i

TABLE OF AUTHORITIES………………………………………….iii

PRELIMINARY STATEMENT……………………………………….1

FACTS…………………………………………………………… 1

ARGUMENT …………………………………………………… 4

POINT I

    THE COPYRIGHT ACT COMPELS DENIAL
    OF DEFENDANTS' MOTION…………………………………….4

    *a.*  *Copyright Ownership*…………………………………………….4

    *b.*  *Defendants' Licensee Status*……………………………………...6

    *c.*  *Taco Tunes' Publishing Rights Do Not*
       *Exceed the Scope of the Express License*……………………….7

POINT II

    BECAUSE THE AMENDED COMPLAINT SUFFICIENTLY
    STATES CLAIMS FOR COPYRIGHT INFRINGEMENT,
    DEFENDANTS' MOTION SHOULD BE DENIED………………..8

POINT III

    DEFENDANTS CANNOT EXERCISE RIGHTS IN THE
    COMPOSITIONS THAT EXCEED THE SCOPE OF
    THE EXPRESS LICENSE ……………………………………..11

    *a.*  *Section 10(a) Does Not Grant*
       *Broad Rights in the Compositions*…………………………...11

    *b.*  *Section 10(c) Does Not Grant Any Rights Beyond*
       *Those Afforded Under the Express License*………………….13

    *c.*  *Section 5(a) Does Not Apply to Plaintiff's Compositions*………14

i

POINT IV

PLAINTIFF'S ASSIGNMENT OF RIGHTS IN THE
MASTERS DOES NOT CREATE AN IMPLIED
LICENSE IN THE COMPOSITIONS...........................................15

POINT V

NEITHER THE STATUTE OF LIMITATION, LACHES
ESTOPPEL NOR IMPLIED CONSENT BAR
PLAINTIFF'S COPYRIGHT INFRINGMENT CLAIMS....................16

a.    *Statute of Limitations*......................................................17

b.    *Laches*.................................................................................19

c.    *Equitable Estoppel*............................................................19

d.    *Implied Consent*...............................................................20

POINT VI

BECAUSE THIS COURT HAS EXCLUSIVE JURISDICTION
OVER CLAIMS FOR COPYRIGYHT INFRINGEMENT,
THE STATE ACTION DOES NOT PRECLUDE THIS
ACTION FOR COPYRIGHT INFRINGMENT...............................21

POINT VII

THE AMENDED COMPLAINT STATES SUFFUCENT CLAIMS
FOR CONTRIBUTORY INFRINGEMENT AGAINST
CUMMINGS, THE HERZOG DEFENDANTS AND
RAMONES PRODUCTIONS......................................................22

POINT VIII

DEFENDANTS ARE NOT ENTITLED TO
RECOVER ATTORNEYS FEES UNDER
SECTION 505 OF THE COPYRIGHT ACT....................................23

## **TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir.2002) ............................................... 24

*Armstrong v. Virgin Records, Ltd.*, 91 F.Supp. 2d 628, 642-43 (S.D.N.Y. 2000) ....................... 17

*Buckhannon Bd. Home Care v. W. Va. Dept. of Health and Human Servs.* 532 U.S. 598, 605 (2001) .............................................................................................................................................. 23

*Chambers v. Time Warner, Inc.*, 279 F. Supp.2d 362, 365, note 3 (S.D.N.Y. 2003). ............ 23, 24

*Chere Amie, Inc. v. Windstar Apparel Corp.* 191 F. Supp. 2d 343, 350 (S.D.N.Y. 2001) ............. 5

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ................................................................................. 8

*County of Suffolk v. Alcorn*, 266 F.3d 131, 138 (2d Cir.2001) ..................................................... 15

*DeCarlo v. Archie Comic Pubs, Inc.*, 127 F. Supp.2d 497 (S.D.N.Y. 2001) ................................. 18

*Dunbar v. Gottwald*, 07-02578 (CRB)(N.D.Cal.) ......................................................................... 24

*Eight Mile Style, LLC v. Apple Computer, Inc.* 07-13164 (ADT)(E.D.Mich.) .............................. 24

*Franklin Electronic Publishing, Inc. v. Unisonic Prod. Corp.* 763 F. Supp. 1,4 (S.D.N.Y 1991) . 9

*Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir. 1971) ............................................................................................................................................ 22

*Ivani Contracting Corp. v. City of New York* 103 F.3d, 257, 259-260 (2d Cir. 1997) ................ 19

*Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46-47 (2d Cir. 2002) ............................................... 5, 7

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 392 (2d Cir. 2006) quoting *Allaire Corp. v. Okumus*, 433 F.3d 248 249-250 (2d Cir. 2006) ......................................................................... 8

*Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F. Supp. 900, 903 (S.D.N.Y., 1981) .......... 22

*Marshall v. New Kids on the Block Partnership* 780 F.Supp. 1005, 1008-10 (S.D.N.Y. 1991) . 21, 22

*Martin Delicatessen, Inc. v. Schumacher*, 52 N.Y. 2d 105,109 (1981) ......................................... 8

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400. 36. (S.D.N.Y. 2002) ............................ 10

*Maverick Recording Co. v. Warner Brothers Records, Inc.,* 2006 U.S. Dist. Lexis 52422 at *5 (E.D.N.Y. 2006) ........................................................................................................ 9

*Merchant,* 92 F.3d at 56 ....................................................................................... 17, 18

*Metro Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.* 545 U.S. 913 (2005) .............................. 24

*Microsoft Corp. v. Harmony Computers & Electronics, Inc.,* 846 F. Supp. 208, 213-14 (E.D.N.Y. 1994) .................................................................................................... 6, 12, 21

*Miller v. Schloss,* 218 N.Y. 400, 407 (1916) ................................................................ 15, 20

*N.Y. Tel. Co. v. Teichner,* 329 N.Y.S. 2d 689, 691 (Sup. Ct. Suffolk Cty. 1972) .................. 15, 20

*Netzer v. Continuity Graphics Assocs., Inc.,* 963 F.Supp. 1308, 1316 (S.D.N.Y. 1997 ......... 17, 18

*Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662. (2d Cir. 1996) quoting *Kramer v. Time Warner, Inc.* 937 F.2d 767, 773 (2d Cir. 1991) ..................................... 8

*Nixon Gear & Mach. Co., Inc. v. Nixon Gear, Inc.,* 447 N.Y.S. 2d 779, 781 (4th Dept. 1982).... 15

*Price v. Fox Entertainment Group, Inc.,* 2007 WL 241387 at *2-3 (S.D.N.Y. 2007)(*Price II*).. 19, 20

*Price v. Fox Entertainment Group, Inc.,* 473 F. Supp. 2d 446, 455-56 (S.D.N.Y. 2007) ("*Price I*") .......................................................................................................... 4, 5, 17, 18

*Red Ball Interior Demolition Corp.,* 173 F.3d 481, 484 (2d Cir. 1999) (accord) ........................ 15

*Stone v. Williams,* 970 F.2d 1043, 1049-50 (2d. Cir. 1992) .......................................... 16, 17

*Sygma Photo News, Inc. v. High Soc. Magazine,* 778 F.2d 89, 92 (2d Cir. 1985) ....................... 23

*T.B. Harms v. Eliscu,* 339 F.2d 823, 828 (2d Cir. 1964) (Friendly, J.) ...................................... 21

*Weber v. Geffen Records, Inc.,* 63 F. Supp.2d 458 (S.D.N.Y. 1999) ........................................ 18

**Statutes**

17 U.S.C § 201(a)(2008) ............................................................................................... 4

17 U.S.C §205 ............................................................................................................ 19

17 U.S.C. § (102(a)(7) ................................................................................................. 5

17 U.S.C. § 102(a)(2) ............................................................................................... 5

17 U.S.C. § 106 ....................................................................................................... 6

17 U.S.C. § 507(b) .............................................................................................. 18, 19

17 U.S.C. §101 (2008) ............................................................................................. 4

17 U.S.C. §204 ....................................................................................................... 6

17 U.S.C. §204(a) .................................................................................................... 5

17 U.S.C. §507(b) .................................................................................................. 16

28 U.S.C. § 1338(a) ............................................................................................... 21

NY UCC §2-106(1) ................................................................................................. 12

**Rules**

Fed. R. Civ. Pro 54(a)(2)(B)(ii) ............................................................................. 23

Fed. R. Civ. Pro. 54(d)(2) ...................................................................................... 23

**Other Authorities**

http://downloads.walmart.com/swap. ..................................................................... 12

http://en.wikipedia.org/wiki/Itunes_Store ............................................................. 17

http://www.apple.com/legal/itunes/us/service.html. ............................................... 13

http://rhapapp.real.com ......................................................................................... 13

Joshua R. Steiman, *Applying UCC Article 2 to Software*, 40 UCC L.J.1Art.4 (Summer 2007). . 12

Lorin Brennan, *Why Article 2 Cannot Apply to Software Transactions*, 38 Duq. L. Rev. 459, 461-465 (2000) ......................................................................................................... 12

**Treatises & Books**

ALAN H. SIEGEL, BREAKING INTO THE MUSIC BUSINESS (Simon & Schuster, 3d Ed. 1990) .......... 7

HOWARD SIEGEL, ED. ENTERTAINMENT LAW (Practicing Law Institute. 2d ed. 1996) 357-358 .... 7

MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §30.01 (2007) ................. 5, 22

WILLIAM F. PATRY, PATRY ON COPYRIGHT §5:123, note 9 and cases cited therein. ...................... 6

## PRELIMINARY STATEMENT

Plaintiff, by his undersigned attorneys, submits this Memorandum of Law (the "Memorandum") in Opposition to Defendants' Motion to Dismiss (the "Motion"). Because Plaintiff is the sole owner of copyright in the Compositions[1], and asserts claims that are within the three year limitations period provided in the Copyright Act, Defendants' Motion should be denied in its entirety.

## FACTS

The facts properly considered on this Motion are limited to those contained in the Amended Complaint and the 1984 Agreement[2]. While those documents speak for themselves, it is helpful to outline the key facts on which this Motion turns.

The 1984 Agreement addresses two distinct groups of copyrightable works—master recordings made by the Ramones which embody Plaintiff's performances (the "Masters"), and the Compositions—songs written by Plaintiff which may be recorded as Masters. Rights in the Masters are governed by Section 5 of the 1984 Agreement. Section 5 expressly provides that the Masters are works made for hire within the meaning of §101 of the Copyright Act, and a concurrent assignment by Plaintiff of all of his interests in the Masters to Defendant Ramones

---

[1] Unless stated otherwise, terms defined in the Amended Complaint are used with the same meaning in this Memorandum. For the Court's convenience, a schedule of frequently used defined terms is attached hereto as Schedule A.

[2] For the Court's convenience, Plaintiff's use the Defendants defined term "1984 Agreement" to refer to the "Recording Agreement," which was defined in the Amended Complaint. The 1984 Agreement is annexed to the Affidavit of Stuart Levy, Esq., sworn to on January 18, 2008 ("Levy Aff") as Exhibit A.

Productions. Section 5 also provides that Plaintiff's assignment of rights in Masters does not vest

in Defendants' "any rights in the copyright of the…Compositions" (1984 Agreement §5).

Rights in the Compositions are governed by Section 10 of the 1984 Agreement. In

Section 10(a), Plaintiff grants Ramones Production a limited license in the Compositions, to

create "records" recorded under the 1984 Agreement (the "Express License"). In Section 1(a)

"records" is defined as:

> all forms of reproductions, including pre-recorded tapes and discs and electronic
> video recordings, now or hereafter known manufactured or sold primarily for
> home use, school use, or use on means of transportation.

Thus, the Express License limits Defendants' rights in the Compositions to recordings made by

the Ramones under the 1984 Agreement, in recording formats that are manufactured or sold to

end user consumers, such as vinyl records and compact discs. Significantly, the Express License

does not permit Defendants to exploit the Compositions in recordings that are not made pursuant

to the 1984 Agreement (e.g. recordings made by persons other than the Ramones). Neither does

the Express License authorize the exploitation of the Compositions in recordings that are

licensed and delivered to end users in intangible formats, such as by digital download.

Section 10(b) is an "agreement to agree," under which the parties contemplated

Plaintiff's grant of music publishing rights to Defendant Taco. However, the parties never

reached agreement on terms, and never executed a publishing agreement. Accordingly, the

Ramones Defendants' rights in the Compositions are limited to those within the scope of the

Express License—the right to exploit physical recordings that are sold to end user consumers.

Section 10(c), in light of the parties' failure to enter into a publishing agreement is

ambiguous on its face. However, the most logical construction of §10(c) is that it relates to

Taco's obligations to administer the Compositions under the Express License. Critically, §10(c)

provides that Taco Tunes is to disburse publishing income to Plaintiff without any compensation, and that it "will pay [Plaintiff] all sums received by it from its exploitation of the…Compositions without any deductions whatsoever" (1984 Agreement §10(c)). This deal structure is inconsistent with customary publishing arrangements, where Publishers typically retain a fee of between 10 and 50% of the funds colleted as compensation for acting as publisher. The "free" publishing services can best be explained by the fact that Taco's principals and commonly controlled company, Ramones Productions, are to be compensated for the exploitation of the Compositions under the Express License. Had Plaintiff and Taco Tunes agreed to a more expansive Publishing agreement, as contemplated (but not completed) in section 10(b), that agreement would have defined the scope of Taco's rights beyond the Express License, provided for Taco's compensation, addressed Plaintiff's approval rights and defined a term during which Taco could exercise those rights (*See* Point I(c), below).

Defendants have exploited the Compositions in a number of ways that exceed the scope of the Express License. First, the Ramones Defendants have authorized the Digital Defendants to offer digital downloads under license to end user consumers (Am. Compl. ¶ 21), and the Digital Defendants have in fact, licensed the Compositions to end user consumers (*Id.* ¶¶ 24-26). Second, the Ramones Defendants have authorized third parties to make recordings of the Compositions outside of the 1984 Agreement. Third, the Ramones Defendants have authorized third parties to synchronize the Composition in motion pictures and television programs (*Id.* ¶ 20). These uses outside of the scope of the Express License constitute acts of copyright infringement, and form the basis of this Action.

**ARGUMENT**

**POINT I**

**THE COPYRIGHT ACT COMPELS DENIAL OF DEFENDANTS' MOTION**

The claims and defenses in this action turn on a number of essential points of copyright law and practice. This first such issue is the threshold question of copyright ownership. Plaintiff, the sole author of the Compositions (Am. Compl. ¶ 14), is the owner of copyright in the Compositions. Defendants apparently contest that claim (*See* Def. Mem at 2, 4, 5, 14, 15, 23). The second issue is the scope of rights under copyright that were licensed by Plaintiff to the Ramones Productions in Section 10(a) of the 1984 Agreement (the "Express License"). Plaintiff, relying on the plain language of the 1984 Agreement, demonstrates in Point III below that the Express License is limited to rights necessary to create physical recording embodying Ramones performances of the Compositions for sale to end users. Third, relying on the "agreement to agree" provision in the 1984 Agreement (10(b)), Defendants claim to have perpetual music publishing rights in the Compositions. However, Plaintiff has pleaded that the parties never completed a publishing agreement, and that Defendants' "publishing" rights are no greater in scope than the rights granted under the Express License. As the copyright ownership and license status are integral to resolving most if not all of the issues raised by the Motion, a review of each of these questions is warranted.

  a.  *Copyright Ownership*

The Copyright Act provides that copyright in a work "vests initially in the author…of the work." 17 U.S.C § 201(a)(2008); *Price v. Fox Entertainment Group, Inc.*, 473 F. Supp. 2d 446, 455-56 (S.D.N.Y. 2007) ("*Price I*"). Copyright automatically attaches at the moment a work is created and fixed in a tangible medium of expression. *See* 17 U.S.C. §101 (2008); *Chere Amie,*

4

*Inc. v. Windstar Apparel Corp.* 191 F. Supp. 2d 343, 350 (S.D.N.Y. 2001). Under the Copyright Act, a transfer of copyright ownership "is not valid unless an instrument of conveyance or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed." 17 U.S.C. §204(a); *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46-47 (2d Cir. 2002); *Price I*, 473 F. Supp. 2d at 456.

Here, Plaintiff is the sole author of the Compositions (Am. Compl. ¶14). Because Plaintiff never assigned copyright ownership to anyone, he remains the owner of copyrights in the Compositions (*See* 1984 Agreement §5).

Under the Copyright Act, musical compositions are expressly within the subject matter of copyright, 17 U.S.C. § 102(a)(2); as are, separately, sound recordings embodying musical compositions 17 U.S.C. § (102(a)(7). Thus, a recording of a music composition implicates two separate copyrights—one in the recording, the other in the composition itself. *See* MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §30.01 (2007).

The 1984 Agreement addresses copyright in the recordings Plaintiff made as a member of the Ramones (the "Masters") (including recordings of the Compositions), and provides for the Plaintiff to assign all rights in his contributions to the Masters to Ramones Productions, the sole owner of the Masters (1984 Agreement, §5). The 1984 Agreement also addresses copyright in the Compositions—expressly acknowledging Plaintiff's ownership of the Compositions (*Id.* §§ 5 and 10), subject to the Express License, in which Plaintiff grants limited rights to Ramones Productions, authorizing the sale and manufacture of recordings embodying the Compositions.

Defendants' position on copyright ownership is confusing. At certain points in the Motion, they contend that Defendant Taco Tunes is the "publisher/owner" (Def. Mem at 2), "publisher (owner)" (*Id.* at 4-5), owner by acquiescence (*Id.* 14-15) or owner by conveyance (*Id.*

at 23) of the Compositions. When it is tactically expedient, Defendants contend that Taco Tunes is the publisher (*Id.* at 9); or that their rights derive from an "implied license" (Def. Mem at 11-14). As discussed throughout this Memorandum, Plaintiff is the sole owner of copyright, subject to the Express License. Because Defendants contend, that they are either the copyright owners, or hold a license that exceeds the scope of the Express License, determination of whether Plaintiff has adequately alleged copyright ownership, is a threshold question on this Motion. Because Plaintiff has pleaded sole authorship of the Compositions and no subsequent assignment of the copyrights arising from his authorship (Am. Compl. ¶¶14, 17-18), this Court should reach the conclusion that Plaintiff is the sole owner of copyright in Compositions.

   b. *Defendants' Licensee Status*

   As the owner of copyright in the Compositions, Plaintiff has the right to exploit all of the exclusive rights afforded copyright owners under the Copyright Act. 17 U.S.C. § 106. Rights under Copyright are divisible, and are customarily limited further by reference to terms such as term, territory, media and usage restrictions. *See* WILLIAM F. PATRY, PATRY ON COPYRIGHT §5:123, note 9 and cases cited therein. Customarily, copyright owners exploit, control and manage others' use of their works by granting licenses to third parties (*Id.* §5:123). *Microsoft Corp. v. Harmony Computers & Electronics, Inc.*, 846 F. Supp. 208, 213-14 (E.D.N.Y. 1994). Copyright licenses may be exclusive, in which the license must be in writing, 17 U.S.C. §204, or may be non-exclusive. A license under copyright does not divest the licensor of ownership in his copyright. PATRY, §5:123. In contrast, an assignment of part or all of a copyright is the permanent transfer of ownership of an interest in copyright. *Id.*, notes 9 and 11 and cases cited therein.

In this case, it is undisputed that Plaintiff licensed the composition to Ramones Productions for use in the manufacture and sale of physical sound recordings (1984 Agreement §10(a)).  Defendants, however contend that a selective reading of certain phrases in the 1984 Agreement actually expands the scope of the Express License (Def. Mem at 8-11).  As discussed below, Defendants "super-license" theory is not supported in the language of the 1984 Agreement.

     *c.   Taco Tunes' Publishing Rights Do Not*
          *Exceed the Scope of the Express License*

A grant of music publishing rights is a subset of music licensing.  Typically, a music publishing agreement will provide for a copyright owner's exclusive grant of rights to a publisher. *See Bovina*, 314. F.3d at 44, note 1 and cases cited therein.  Customarily, a music publishing agreement will provide for the publisher to pay the writer or owner an advance and for the publisher to retain a percentage based fee (usually between 10% and 50%) in exchange for its sales.  HOWARD SIEGEL, ED. ENTERTAINMENT LAW (Practicing Law Institute. 2d ed. 1996) 357-358; ALAN H. SIEGEL, BREAKING INTO THE MUSIC BUSINESS (Simon & Schuster, 3d Ed. 1990).  Publishing agreements customarily include audit and reporting, minimum payment and termination provisions.  ALAN H. SIEGEL, at 33-34.  Most publishing agreements also include provisions defining the scope of the publisher's rights and authority to exploit the writer's copyright, and those that require the writer's approval over certain of the publisher's activities. HOWARD SIEGEL at 357-58.  For example, many music publishing agreements prohibit the publisher from licensing a writer's work for television commercials. *Id.*

The Amended Complaint contains an "agreement to agree" to a publishing agreement (Am. Compl. ¶ 17; 1984 Agreement §10(b)).  The Parties, however, never agreed to the terms of a publishing agreement, and none was ever signed. (Am. Compl. ¶ 17).  Nonetheless, Defendants

contend that Taco Tunes acts as publisher of Plaintiff's work for all purposes (Def. Mem at 13-14a). Because, however, a court may not enforce an agreement to agree. *Martin Delicatessen, Inc. v. Schumacher*, 52 N.Y. 2d 105,109 (1981). Neither may a New York court enforce a contract in the absence of sufficiently defined terms. *Id.* Because the promised publishing agreement lacks payment and duration terms, and does not define the scope of the Defendants' publishing rights, no publishing agreement beyond the simple license was ever formed.

## POINT II

### BECAUSE THE AMENDED COMPLAINT SUFFICIENTLY STATES CLAIMS FOR COPYRIGHT INFRINGEMENT, DEFENDANTS' MOTION SHOULD BE DENIED

A motion to dismiss should be denied unless the moving party can demonstrate "beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would not entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In evaluating a motion under Rule 12(b)(6), a court should limit its inquiry to "facts stated in the complaint or documents attached to the complaint or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662. (2d Cir. 1996) quoting *Kramer v. Time Warner, Inc.* 937 F.2d 767, 773 (2d Cir. 1991). In deciding the motion, the court must "accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 392 (2d Cir. 2006) quoting *Allaire Corp. v. Okumus*, 433 F.3d 248 249-250 (2d Cir. 2006).

A claim for copyright infringement is sufficiently pleaded if the complaint states "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that copyrights have been registered in accordance with the

statute, and (4) by what acts during what time the defendant infringed the copyright." *Franklin Electronic Publishing, Inc. v. Unisonic Prod. Corp.* 763 F. Supp. 1,4 (S.D.N.Y 1991). *See also Maverick Recording Co. v. Warner Brothers Records, Inc.,* 2006 U.S. Dist. Lexis 52422 at *5 (E.D.N.Y. 2006).

The Amended Complaint satisfies each of these pleading requisites. First, Plaintiff identifies his six Compositions (Am. Compl. ¶ 13). Second, Plaintiff states that he is the sole owner of copyright in the Compositions (*Id.* ¶ 18). Third, Plaintiff alleges registration in compliance with the statutory requirements of the Copyright Act (*Id.* ¶ 15). Finally, Plaintiff alleges, as specific acts of infringement, the Ramones Defendants' authorization of third parties' use of the Compositions beyond the scope of uses permitted in the 1984 Agreement (*Id.* ¶¶ 20-21): and the Digital Defendants sub-license of the compositions to end user consumers (*Id.* ¶¶ 24-26). Accordingly, the Amended Complaint sufficiently states claims for Copyright Infringement.

In an attempt to avoid the inevitable denial of their Motion, Defendants argue that the 1984 Agreement, on its face, contradicts the essential allegations of the Amended Complaint, in that a comprehensive license to exploit the Compositions "in all media now known or hereafter devised" can be read into that agreement. As discussed in greater detail in Point III below, Defendants' "super-license" theory is a house of cards built on the selective citation of isolated words and phrases from the 1984 Agreement that are quoted out of context. Rather, Defendants' rights in the Compositions arising from the 1984 Agreement are limited to the scope of rights granted in the Express License—the right to exploit the Compositions in physical recording that are manufactured and sold to consumers for home use. All other rights under copyright are reserved to Plaintiff (1984 Agreement §§.10(a); 5). The 1984 Agreement is consistent with the

9

Amended Complaint (see Am. Compl. ¶ 18), and is not a source of dispositive contradiction as suggested by Defendants.

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400. 36. (S.D.N.Y. 2002), relied on by Defendants (Def. Mem at 8) demonstrates that the contradictory documents exception cannot sustain Defendants' Motion. In Matusovsky, the Plaintiff brought Title VII Claims against his employer. Id. at 399. In connection with settling a prior suit arising out of his employment, plaintiff had previously executed a release which stated in part "I...release and give up any and all claims which I may have against you...including those of which I am not aware and those not mentioned in this release" (Id.). The court ruled that Plaintiff's claims were barred by the release, notwithstanding the allegations in his complaint and granted Defendant's motion to dismiss because "the language of the General Release is clear and unambiguous...[covering] 'anything which has happened up to now'" (Id. at 400).

Unlike the release in Matusovsky, the 1984 Agreement is in no way clear and unambiguous in granting the "super-license." In fact, as discussed before, the clear and unambiguous language of the Express License limits Defendants' rights in the Compositions to "reproductions ...manufactured or sold primarily for home [and other] use[s]..." (1984 Agreement, ¶¶ 10(a); and 1(d)), and expressly states that the broad grant language relied on by Defendants does not vest "any rights in the copyright of the Controlled Compositions as opposed to the recordings thereof" (Id. ¶ 5).

Thus, because the Amended Complaint sufficiently states claims for copyright infringement, and the 1984 Agreement in no way contradicts those allegations, Defendants' Motion should be denied in its entirety.

## POINT III

## DEFENDANTS CANNOT EXERCISE RIGHTS IN THE COMPOSITIONS THAT EXCEED THE SCOPE OF THE EXPRESS LICENSE

As discussed in Points I and II, the Amended Complaint alleges that Plaintiff is the sole owner of copyrights in the Compositions, and that Defendants committed infringing acts by exploiting the Compositions beyond the scope of the Express License.

Defendants however, misrepresent the 1984 Agreement to argue that "Plaintiff clearly granted Ramones Productions and Taco Tunes the right to exploit the Compositions allegedly written by Plaintiff in any and all media" (Def. Mem. at 9). Defendants' "super-license" argument—on which their entire motion rises and falls—is predicated on a tactical misreading of three provisions of the 1984 Agreement—only one of which relates to the Compositions.

    *a.*    *Section 10(a) Does Not Grant*
           *Broad Rights in the Compositions*

The first block of Defendants' "super-license" theory is the Express License. Defendants correctly note that under the Express License, Plaintiff grants a license to Ramones Productions to use the Compositions on "records recorded hereunder" (*Id.* at 9; quoting the 1984 Agreement at Section 10(a)). Defendants, however, misrepresent "records" to have been defined in the Agreement as "all forms of reproduction . . . .now or hereafter known" (Def. Mem at 9). Significantly, the language following Defendants' selective quote expressly limits the scope of the license granted to Defendants. In full, the section reads:

> "Records" "phonograph records", "recordings" and "derivatives" means all forms of reproductions including pre-recorded tapes and discs and electronic video recordings, now or hereafter known *manufactured or sold* primarily for home use, school use, juke box use or use on means of transportation.

Critically, digital downloads offered by the Digital Defendants are neither manufactured nor sold. Rather than being manufactured, digital downloads, by definition, are transmitted

electronically, without being fixed in any physical device. Rather than being sold to consumers, digital downloads are licensed to end users. Under copyright law, there is clear delineation between the sale of goods embodying copyrighted works, which is authorized under the Express License, and a license under copyright which is not authorized. *Microsoft*, 846 F. Supp. at 213. Article 2 of the UCC defines the sale of goods as the passing of title from seller to the buyer for a price. NY UCC §2-106(1). When a retailer sells a compact disc embodying Plaintiff's Compositions, it effects a sale under the Copyright Act's first sale doctrine (*see Microsoft*, 846 F. Supp. at 213) and the UCC. When one of the Digital Defendants enters into an end user license agreement permitting the downloads and limited use on no more than five playback devices of one of Plaintiff's Compositions, that transaction is a license, not a sale. *Id*[3].

The Digital Defendants' own service offerings make clear that they offer licenses, not manufactured products for sale. Consumers seeking to download music from Defendant WalMart's service are advised that "in order to continue, you must accept our End User License Agreement," and are prohibited from completing any downloads until they accept the terms of WalMart's license. That license makes clear that WalMart's is not selling music to its customers, but is providing "limited, nontransferable, nonexclusive, revocable, nonsublicensable right to use the Products for personal use in accordance with the terms of this Agreement." *See* http://downloads.walmart.com/swap.

---

[3] Indeed, the National Conference of Commissioners on Uniform State Laws and the American Law Institute have long struggled, unsuccessfully, to reach consensus on an "Article 2B" to the UCC which would govern licensing, distinct from Article 2's provisions directed at sales. *See e.g.*, Lorin Brennan, *Why Article 2 Cannot Apply to Software Transactions*, 38 Duq. L. Rev. 459, 461-465 (2000); Joshua R. Steiman, *Applying UCC Article 2 to Software*, 40 UCC L.J.1Art.4 (Summer 2007).

Similarly, the end user license for Defendant Apple's iTunes service limits users' use of downloaded music by requiring assent to twelve "Usage Rules." *See* http://www.apple.com/legal/itunes/us/service.html.

Finally, Defendant Real's terms of use applicable to downloads contains numerous provisions limiting a user's use of downloaded music, while the terms of service for Real's Rhapsody subscription service provide that:

> Regardless of the use of the word "purchase," all tracks offered for download or burning are offered for license, not purchase or sale, and are subject to this Agreement and any other license terms and conditions applicable to the track, including limitations imposed by the use of digital rights management technology. All licenses to download or burn tracks are personal to the customer.

*See* http://rhapapp.real.com

The scope of the Express License does not permit the Ramones Defendants to sublicense the right to license the Compositions to others. Neither does the Express License contemplate licensing the Compositions to end users. Thus, the licenses granted by the Ramones Defendants authorizing the Digital Defendants to license the Compositions to consumers in the form of digital downloads infringes Plaintiff's copyrights. Similarly, each time any of the Digital Defendants grants end user licenses to consumers who have downloaded recordings embodying Plaintiff's Compositions, each such Digital Defendant infringes Plaintiff's copyrights. Accordingly, the Express License granted is not a basis for granting Defendants' motion.

b.  *Section 10(c) Does Not Grant Any Rights Beyond Those Afforded Under the Express License*

The second block of Defendants' "super-license" theory is Section 10(c). Here, Defendants misrepresent the plain language of that provision in stating that "Paragraph 10(c) makes clear that Taco Tunes, an express 'signatory to the Agreement' will act as Publisher for Plaintiff's compositions" (Def. Mem at 9). Section 10(c) does not appoint Taco Tunes as

13

Plaintiff's publisher. Rather, that section sets forth Taco Tunes' payment and credit obligations to Plaintiff with respect to its administration of the Express License (See Point I(c), above). While Section 10(c) requires Taco Tunes to accord Plaintiff "credit as a writer for each Controlled Composition on all copies of *records* recorded [under the 1984 Agreement", and to "pay [Plaintiff] all sums received by it from exploitation of the Controlled Compositions", it does not expand the scope of the Express License[4].

### c.   Section 5(a) Does Not Apply to Plaintiff's Compositions

The third block of Defendants' "super-license" theory is Section 5(a)'s grant of rights to "commercially exploit the *Masters* 'in any and all fields of use, by any method now or hereafter known. . ." (Def. Mem at 9-10). Again, Defendants have misleadingly quoted a section of the 1984 Agreement that is ineffective to expand the scope of the Express License. Critically omitted in Defendants' discussion is the express disclaimer that the grant of rights in Section 5 is limited only to the Masters and does not "vest in Company any rights in the copyright of the Controlled Compositions, as opposed to the recordings thereof contained in the Masters" (1984 Agreement § 5). This Action and Defendants motion addresses only the copyright in the Compositions, *not* the Masters. Thus, Defendants' attempt to link these provisions to those defining the scope of the Express License in the Compositions should be rejected.

Although the Amended Complaint contains sufficient allegations to state Plaintiff's claims for copyright infringement, Defendants improperly seek to look beyond the pleadings to the 1984 Agreement to support their Motion. Far from being an unequivocal, undisputed source dispositive fact, Defendants torture the language of the 1984 Agreement as if neither Plaintiff nor

---

[4] As discussed in Point I(c) above, no publishing agreement was ever formed, despite the parties' unenforceable agreement to agree. Thus, there is no publishing agreement that would expand the Express License.

this Court will actually read the document. Faced with the slightest scrutiny of actually reviewing the provisions in their entirety, the blocks of Defendants' "super-license" argument collapses as if it were a house of cards. Accordingly, this Court should reject Defendants' "super-license" theory and deny the Motion in its entirety.

## POINT IV

### PLAINTIFF'S ASSIGNMENT OF RIGHTS IN THE MASTERS DOES NOT CREATE AN IMPLIED LICENSE IN THE COMPOSITIONS

Defendants contend that an implied license in the Compositions was granted by Plaintiff by virtue of his assignment of his rights in the Masters under §5(a). However, Defendants' implied license theory fails because it is contrary to New York contract law (Def. Mem at 11-14).

As discussed above, the 1984 Agreement expressly provides that Section 5 does not "vest in Company any rights in the copyright of the Controlled Compositions." Thus, Defendants' theory, which requires this Court to impose a license contrary to the plain language of the 1984 Agreement disclaiming conveyance of copyright, is improper basis for granting the motion. *See e.g. County of Suffolk v. Alcorn*, 266 F.3d 131, 138 (2d Cir.2001) (New York law precludes a court from varying unambiguous contract language) ; *Red Ball Interior Demolition Corp.*, 173 F.3d 481, 484 (2d Cir. 1999) (accord).

Second, New York law does not recognize implied contracts "where there is an express contract covering the subject matter involved." *N.Y. Tel. Co. v. Teichner*, 329 N.Y.S. 2d 689, 691 (Sup. Ct. Suffolk Cty. 1972); *see also Miller v. Schloss*, 218 N.Y. 400, 407 (1916); *Nixon Gear & Mach. Co., Inc. v. Nixon Gear, Inc.*, 447 N.Y.S. 2d 779, 781 (4th Dept. 1982). Here, the Express License defines the limits of Defendants' license in the Compositions. Defendants' entire Motion rests on the wholly unsupportable argument that this Court can somehow expand

the scope of the Express License to include digital downloads and other unauthorized licensing configurations. Because such a conclusion is contrary to the plain language of the 1984 contract, and contrary to the law of implied licenses, Defendants' theory should be rejected[5].

## POINT V

### NEITHER THE STATUTE OF LIMITATION, LACHES ESTOPPEL NOR IMPLIED CONSENT BAR PLAINTIFF'S COPYRIGHT INFRINGMENT CLAIMS

Defendants assert a number of defenses that are based on the timeliness of this Action. (Def. Mem at 14-18). Defendants contend that Plaintiff's knowledge of their use of the Compositions for more than twenty years supports dismissal on either limitations, laches, estoppel or implied consent grounds. However, because Plaintiff's long term knowledge is limited to Defendant's *authorized* phonorecord uses under the Express License, and he has never acquiesced to infringing uses (e.g. digital licensing, motion picture synchronization uses), the Ramones Defendants' exercise of rights as licensee is incompetent to support Defendants' timeliness theories. On the contrary, all of Plaintiff's claims accrued within the Copyright Act's three year limitations period, and are timely. 17 U.S.C. §507(b); *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d. Cir. 1992).

Plaintiff alleges three discrete types of claims—(i) infringing acts committed by all Defendants in connection with the Digital Defendants use of Compositions; (ii) infringing acts committed within three years of filing the initial complaint by the Ramones Defendants that are unknown to Plaintiff in connection with authorizing other uses beyond the scope of Defendants'

---

[5] Defendants' implied non-exclusive license theory is plainly at odds with their own argument that the Ramones Defendants *own* Plaintiff's copyrights (Def. Mem at 2, 4, 5, 14, 15, 23). Just as this court cannot resolve factual disputes between Plaintiff and Defendants on this Motion, it cannot resolve Defendants' own factual inconsistencies.

license, (such as licensing motion picture and television uses); and (iii) ownership of copyright in the Compositions (Am. Compl. ¶¶ 20,21, 24-26).

Defendants' grant of licenses for digital uses and the Digital Defendants' consequent digital licensing to end user consumers has occurred primarily between September 20, 2004 (the limitations date) and the present[6]. Infringing conduct other than digital licensing during the limitations period is, by definition, within the limitation period. Finally, the Ramones Defendants have on this Motion asserted for the first time that they are owners—as opposed to licensees—of copyrights in the Compositions (Def. Mem at 2, 14, 15, 23). This, the limitations period for Plaintiff's sole ownership claims started running when Defendants filed this Motion. *See Price I*, 473 F. Supp. 2d at 456, and cases cited therein.

    *a.    Statute of Limitations*

"Each act of [copyright] infringement is a distinct harm giving rise to an independent claim of relief." *Stone*, 970 F.2d at 1049. A copyright owner is permitted to recover for "those acts occurring within three years of suit" (*Id.* at 1049). An express assertion of sole copyright ownership, as the Ramones Defendants make for the first time on this Motion, "will start the copyright statute of limitations running." *Price I*, 473 F. Supp. 2d at 455 (quoting *Netzer v. Continuity Graphics Assocs., Inc.*, 963 F.Supp. 1308, 1316 (S.D.N.Y. 1997) *see also*, *Merchant*, 92 F.3d at 56; *Armstrong v. Virgin Records, Ltd.*, 91 F.Supp. 2d 628, 642-43 (S.D.N.Y. 2000). In this case, the infringements relating to digital licensing and other non-permitted uses occur within the three year period prior to filing suit and are thus timely. Defendants' claim to

---

[6] Although not before this Court in the pleadings, Defendants request that, for purposes of this Motion, the Court take judicial notice that Defendant Apple's iTunes Music store service first became available to the public on April 28, 2003 and has operated continuously since that date. *See* http://en.wikipedia.org/wiki/Itunes_Store; Apple Computer, Inc. Form 10-K, filed with the U.S. Securities and Exchange Commission on December 19, 2003.

ownership of Plaintiff's copyrights is asserted for the first time on this Motion, so that claim too is timely.

Defendants' citation to cases applying the three year statute of limitation to cases involving co-ownership are inapplicable here as each of the cases cited by Defendants involved a plaintiff who was fully aware of the defendant's claim to ownership years prior to the bar date. In *Merchant*, 92 F.3d at 56, court reached its conclusion that Plaintiff's claim was time barred only after a jury finding that the Plaintiff was aware of his co-authorship claim more than thirty years before commencing suit. 92 F.3d at 56. The holding in each of *DeCarlo v. Archie Comic Pubs, Inc.*, 127 F. Supp.2d 497 (S.D.N.Y. 2001); *Weber v. Geffen Records, Inc.*, 63 F. Supp.2d 458 (S.D.N.Y. 1999) and *Netzer*, 963 F.Supp.1388 were predicated on express findings that the time barred plaintiff had actual knowledge of the Defendant's claim of copyright ownership more than three years before suit was commenced.

In this case, the Ramones Defendants' conduct—collecting publishing royalties from mechanical reproduction of the Masters—was completely consistent with the Express License, and did not reflect a claim of copyright ownership[7]. Unlike the Defendants in *Merchant, DeCarlo, Weber* and *Netzer*, the Ramones Defendants here first asserted claims to copyright ownership in this Motion. Thus Plaintiff's ownership claims are timely and cannot be barred by 17 U.S.C. § 507(b). *See Price I*, 473 F. Supp.2d at 455[8].

---

[7] The Ramones Defendants' failure to pay those royalties to Plaintiff gives rise to Plaintiff's state law contract and tort claims, which are not before this Court. However, the investigation into these claims of which led to the Plaintiff's discovery that Defendants were not only withholding Plaintiff's royalties, but exploiting the Compositions beyond the scope of the Express License in violation of Plaintiff's copyrights.

[8] Neither do the copyright registration for three songs, referenced by Defendants (Def. Mem. at 15), support the contention that Plaintiff should have been aware of the Ramones Defendants claim to Copyright ownership. Those registrations, which were presented to this Court at a

b.    *Laches*

Defendants' laches argument rests on the same premise as their statute of limitation argument—that Plaintiff was aware of Defendants' infringing conduct and did not object. As discussed above, Plaintiff was aware of the Ramones Defendants' conduct as licensee for more than twenty years, and sought contract and tort remedies for breaches of the Express License. When Plaintiff became aware of Defendants' acts of copyright infringement and observed that Defendants where acting like owners rather than licensees, he commenced this suit. Generally, laches cannot, as a matter of law, be asserted as a defense where a federal statute sets an express limitation period. *Ivani Contracting Corp. v. City of New York* 103 F.3d, 257, 259-260 (2d Cir. 1997). *Price v. Fox Entertainment Group, Inc.,* 2007 WL 241387 at *2-3 (S.D.N.Y. 2007)(*Price II*). As Plaintiff's claims here address conduct that occurs within 17 U.S.C. § 507(b)'s three year period, laches cannot operate as a defense. *Ivani*, 103 F.3d at 259-60; *Price II*, 2007 WL 241387 at *2-3[9].

c.    *Equitable Estoppel*

In a copyright action:

"[e]stoppel requires proof that (1) plaintiffs has knowledge of defendants' infringing conduct; (2) plaintiffs intended that defendants rely on plaintiffs' conduct, or plaintiffs acted in such a manner that defendants has a right to believe

---

November 27, 2007 pretrial conference, reflect that Taco Tunes is a "copyright claimant" and that Plaintiff is the author of the Compositions. The registrations do not reflect an assignment of Plaintiff's copyrights. Thus, the registrations are consistent with the Ramones Defendants' licensee status and *not* with any claim of copyright ownership. See 17 U.S.C §205, (providing a statutory predicate for the recordation of any interest in copyright, including non-exclusive licenses).

[9] Although this Court, in *Price II* recognized that laches could apply to claims asserting ongoing infringement, that exception applies to ongoing conduct that originated earlier than the commencement of the limitations period, but where the last infringing act occurred during the limitation period. As Plaintiff here seeks only to address infringements that began and continued within the limitation period, the exception does not apply.

they were intended to rely on the conduct; (3) defendants were ignorant of the true facts; and (4) defendants did, in fact, rely to their detriment."

*Price II*, 2007 WL 241587 at *3. Here, Plaintiff developed suspicion of Defendants' infringing conduct—acts beyond the scope of the Express License—in the course of investigating his state law claims, and acted promptly to enforce his rights. Defendants' attempt to confuse Plaintiff's knowledge of non-infringing activity (i.e. exploiting physical recordings) with his knowledge of infringing conduct (i.e. sublicensing digital rights) should be rejected. Nothing in the Amended Complaint suggests that Plaintiff intended that Defendants rely on his conduct to believe they had rights beyond those granted in the Express License. Moreover, Defendants were hardly ignorant of Plaintiff's copyright ownership and limited scope of their license—their own copyright registrations state that Plaintiff is the author of three of the Compositions. There is no allegation in the Amended Complaint that suggests that Defendants were ignorant of Plaintiff's rights. Finally, nothing in the Amended Complaint alleges that Defendants in any way relied on Plaintiff to their detriment. Accordingly, equitable estoppel cannot support Defendants' Motion to Dismiss.

     *d.*    *Implied Consent*

    As Defendants note, (Def. Mem at 17) and this Court has held, implied consent is analyzed under the same factor as is equitable estoppel. *Price II,* 2007 WL 241387 at *2. For the same reasons that Defendants cannot sustain a motion to dismiss on an equitable estoppel theory, they cannot do so on an implied consent theory. Moreover, Defendants' implied consent theory suffers from the same infirmity as does their implied license theory—the terms of the implied consent are contrary to the limiting terms of the *express* license governing the parties' relationship. *Teichner*, 329 N.Y.S. 2d at 691; *Miller*, 218 N.Y. at 407. Accordingly, implied consent cannot sustain Defendants' Motion.

## POINT VI

### BECAUSE THIS COURT HAS EXCLUSIVE JURISDICTION OVER CLAIMS FOR COPYRIGYHT INFRINGEMENT, THE STATE ACTION DOES NOT PRECLUDE THIS ACTION FOR COPYRIGHT INFRINGMENT

Federal law provides that "the district courts shall have original jurisdiction of any civil action arising under...[the Copyright Act]" and that "[s]uch jurisdiction shall be exclusive of the courts of the states..." 28 U.S.C. § 1338(a). Because the Amended Complaint seeks a declaration of Plaintiff's copyright ownership, and remedies arising from specific acts of infringement, this action arises under the Copyright Act and is subject to the exclusive jurisdiction of the federal courts. *T.B. Harms v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964) (Friendly, J.); *Marshall v. New Kids on the Block Partnership* 780 F.Supp. 1005, 1008-10 (S.D.N.Y. 1991)

> Whether a Complaint arises under the copyright laws is to be determined with reference to the well-pleaded complaint rule. If the complaint discloses the element necessary for a copyright infringement claim, the plaintiff's reference to a contractual license granted to the defendant by way of anticipation, repudiation, or the defendant's interposition of a defense based on contact does not turn a copyright claim into one for breach of contract.

780 F. Supp. at 1008. *See also, Microsoft,* 846 F.Supp. at 214.

In an attempt to cast Plaintiff's claims as arising under contract law, Defendants mischaracterize the State Action and this case. In the State Action, Plaintiff seeks royalties from Defendants' exploitation of the Masters and for non-payment of royalties attributable to lawful use of the Compositions under the Express License. These are contract and tort claims[10].

---

[10] The State Action is not an improper "campaign of litigation," (Def. Mem. at 24) but rather a single action that was dismissed in California on jurisdiction grounds, refiled in New York, and voluntarily suspended by all parties for three years, while prior counsel attempted to reach a settlement.

In this Action, Plaintiff seeks to adjudicate ownership of copyright in the Compositions --

a question that is hotly disputed by Defendants—and to recover damages attributable to acts of

infringement. These claims clearly arise under copyright and are properly and exclusively heard

by this Court. *Marshall*, 780 F.Supp. at 1009-10. Accordingly, this Court should reject

Defendants' subject matter jurisdiction challenge.

**POINT VII**

**THE AMENDED COMPLAINT STATES SUFFUCENT CLAIMS FOR
CONTRIBUTORY INFRINGEMENT AGAINST CUMMINGS,
THE HERZOG DEFENDANTS AND RAMONES PRODUCTIONS**

A party who, "with knowledge of infringing activity, induces causes or materially

contributes to the infringing conduct of another may be held liable as a contributory infringer."

*Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir.

1971). As Nimmer notes, contributory liability for copyright infringement is "an outgrowth of

the tort concept of expertise liability." NIMMER § 12.04 [A] [3] [a]. Nimmer further notes that:

> If a corporation commits an act of infringement its individual officers and its
> parent corporation will be liable as related defendants if there is a substantial and
> continuing connection between them and the corporation with respect to the
> infringing acts. Thus, an officer of an infringing corporation will be personally
> liable if he either participates [in the infringement] personally....or if he is the
> dominant influence in the corporation and determines the policies that result in
> infringements, or if he derives financial benefit from he infringing activities either
> as a major shareholder or through the means or on the basis of some combination
> of the above criteria.

NIMMER § 12.04[A][i]. See also *Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F. Supp.

900, 903 (S.D.N.Y., 1981) ("Where an individual directly causes a corporate defendant to

infringe and personally participates in the acts constituting the infringement, he is jointly and

severally liable for the infringement"). It is settled law in the Second circuit "all persons and

corporations who participate in, exercise control over or benefit from the infringement are jointly

22

and severally liable as copyright infringers." *Sygma Photo News, Inc. v. High Soc. Magazine*, 778 F.2d 89, 92 (2d Cir. 1985).

Here, the Amended Complaint alleges that Defendants Cummings, Herzog, Herzog and Strauss and Ramones Productions direct the policies and operations of Defendant Taco Tunes (Am. Compl. ¶ 23), and that Cummings, while he was alive, acted as lead man for the Ramones (*Id.* ¶ 7). Consistent with the body of the law that holds control persons and those who benefit financially from infringing activity contributorily liable, the Amended Complaint states sufficient claims for contributory infringement. Accordingly Defendants' motion as to contributory infringement should be denied.

## POINT VIII

## DEFENDANTS ARE NOT ENTITLED TO RECOVER ATTORNEYS FEES UNDER SECTION 505 OF THE COPYRIGHT ACT

In an argument that reflects both lack of familiarity with federal practice and stunning arrogance, Defendants suggest that this Court, on a Motion to Dismiss, should order an award of attorney's fees to Defendants (Def. Mem 21-24). The law is well settled, however, that a request for attorney's fees under Section 505 of the Copyright Act is properly asserted as a post-judgment motion under Fed. R. Civ. Pro. 54(d)(2). *See Chambers v. Time Warner, Inc.*, 279 F. Supp.2d 362, 365, note 3 (S.D.N.Y. 2003).

Rule 54(d)(2) requires that a motion for attorney fees "be filed no later than 14 days *after* then entry of judgment." *Fed R. Civ. Pro* 54(a)(2)(B)(ii). The Supreme Court held that, for purpose of attorney fee shifting statutes, a party seeking attorney fees cannot be a "prevailing party" where it has failed to secure a judgment on the merits. *Buckhannon Bd. Home Care v. W. Va. Dept. of Health and Human Servs.* 532 U.S. 598, 605 (2001). Significantly, this Court has held that the *Buckhannon* rule applies to application for attorney fees under the Copyright Act

*Chambers*, 279 F. Supp.2d 365, note 4. Here, not only has no judgment been rendered for Defendants, it is unlikely that judgment will be entered for Defendants. Thus this aspect of Defendants' Motion is both substantively and procedurally infirm.

Defendants' arrogance is belied by the assumption that this Court will uncritically accept their flawed arguments and anoint them the prevailing parties before rendering judgment. Their frivolousness argument rests on two points. The first is that "the 1984 Agreement conveyed to Taco Tunes ownership of the Compositions". The second is that Plaintiff is involved in litigation with some of the Defendants over state law claims involving the Masters in the State Action. (Def Mem at 23-24).

As demonstrated above, Plaintiff did not convey his copyrights under the 1984 Agreement and therefore states sufficient claims for copyright infringement. Moreover, Plaintiff's claims in this Action state cognizable claims for copyright infringement, while his claims in the State Action allege tort and contract claims, primarily addressing the Masters, not the Compositions, that are separate and distinct from his copyright claims. Indeed, the only frivolous conduct in this case is Defendants' Motion, which relies solely on a wholesale distortion of the 1984 Agreement to vary the plain language of the Amended Complaint and the 1984 Agreement[11].

---

[11] Copyright cases addressing digital exploitation of music are far from frivolous, and reflect a significant quantum of current copyright practice in the federal courts. *See e.g. Metro Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.* 545 U.S. 913 (2005); *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir.2002). More specifically, two recent federal cases, one pending, the other settled last month, both name Apple as a defendant and address the precise questions raised here—when and under what circumstances does end user digital licensing exceed the scope of previously granted rights to exploit music compositions? *Dunbar v. Gottwald*, 07-02578 (CRB)(N.D.Cal.)(case involving iTunes offer of download licenses of an Avril Lavigne composition, settled); *Eight Mile Style, LLC v. Apple Computer, Inc.* 07-13164 (ADT)(E.D.Mich.)(case involving iTunes offer of download licneses of Eminem compositions, pending).

Because this aspect of Defendants' motion is procedurally defective and substantively incorrect, this Court should deny Defendants' application for attorney's fees.

Accordingly, this Court should reject Defendants' subject matter jurisdiction argument[12].

## CONCLUSION

For all foregoing reasons, Defendants' Motion should be denied in its entirety.

Dated: New York, New York
February 19, 2008

Respectfully submitted,

ROBERTS & RITHOLZ LLP

By:

Jeff Sanders
183 Madison Avenue, 19th Floor
New York, New York 10016
Tel: (212) 448-1800
Fax: (212) 504-9553
Email: jsanders@robritlaw.com

*Attorneys for Plaintiff*

## SCHEDULE A

## FREQUENTLY USED DEFINED TERMS

**"1984 Agreement"** means the recording agreement between Plaintiff and Ramones Productions, dated August 1, 1984 (the 1984 Agreement is annexed to the Levy Aff. As Exhibit A).

**"Action"** means this civil action, No. 07 Civ. 8233 (SAS)

**"Amended Complaint"** or **"Am. Compl."** means the Amended Complaint in this Action, dated January 8, 2008

**"Def. Mem."** means the Memorandum of Law in Support of Defendants' Motion to Dismiss.

**"Defendants"** means all of the defendants in this Action.
**"Digital Defendants"** means Defendants Wal Mart, Apple and Real (Am Compl. ¶7).

**"Express License"**  means the license of certain rights in the Compositions granted by Plaintiff to Ramones Productions in Section 10(a) of the 1984 Agreement (Pl. Mem. at 2)

**"Levy Aff."**:  means the Affidavit of Stuart Levy, Esq. in support of Defendants' Motion to Dismiss, sworn to on January 18, 2008  (Pl. Mem. at 1, note 2)

**"Memorandum"** or **Pl. Mem.** means Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated February 19, 2008.

**"Motion"**  means Defendants' Motion to Dismiss. (Pl. Mem. at 1).

**"Ramones Defendants"** means Taco Tunes, Ramones Productions, Herzog & Strauss, Ira Herzog and the Estate of John Cummings (Am. Compl. ¶12).

**"State Action"** means the case pending in the Supreme Court for the State of New York captioned *Reinhardt v. Cummings* et al, Index No. 04/601064.  (The Amended Complaint in the State Action is annexed to the Levy Aff. as Exhibit D).