UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RICHARD REINHARDT
(pka Richie Ramone and Richie Beau), an individual,   :   Index No. 07 Civ. 8233 (SAS)

               Plaintiff,   :

  -against-   :

WAL MART STORES, INC., APPLE, INC.,   :
REALNETWORKS, INC., ESTATE OF
JOHN CUMMINGS (aka JOHN RAMONE and   :
JOHNNY RAMONE), TACO TUNES, INC.,
RAMONES PRODUCTION, INC., HERZOG & STRAUS,:
IRA HERZOG,
               Defendants.   :
-------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Table of Authorities | ii |
| Preliminary Statement | 1 |

Argument I

    TACO TUNES HAS THE RIGHT TO LICENSE THE COMPOSITIONS AS EITHER THEIR OWNER OR PLAINTIFF'S LICENSEE ............ 1

Argument II

    THE 1984 AGREEMENT GRANTS TACO TUNES THE NEEDED EXPRESS LICENSE ............ 2

Argument III

    THE 1984 AGREEMENT ALSO IMPLIEDLY LICENSES DEFENDANTS' USE OF THE COMPOSITIONS ............ 5

Argument IV

    TACO TUNES IS THE COPYRIGHT OWNER OF THE COMPOSITIONS, AND PLAINTIFF'S OBJECTIONS ARE STALE ............ 6

Argument V

    PLAINTIFF'S CLAIMS BELONG IN STATE COURT ............ 9

Argument VI

    THE CONTRIBUTORY INFRINGEMENT CLAIM REMAINS DEFECTIVE ............ 9

Argument VII

    AN AWARD OF ATTORNEY'S FEES AGAINST PLAINTIFF IS PROPER ............ 10

Conclusion ............ 10

## Table of Authorities

**Cases Cited:**                                                                                           Page(s)

Airframe Sys. v. Communs. Corp., 2006 U.S.Dist. LEXIS 64362
(S.D.N.Y. 2006) ............................................................................................... 9, 10

Bell Atlantic v. Twombly, 2007 U.S. LEXIS 5901, 127 S.Ct. 1955,
167 L.Ed. 2d 929 (2007) ................................................................................... 1

Conley v. Gibson, 355 U.S. 41 (1957)................................................................. 1

Miller v. Schloss, 218 N.Y. 400 (1916) ............................................................. 6

Minder Music, Ltd. v. Mellow Smoke Music Co., 1999 U.S. Dist. LEXIS 16001;
52 U.S.P.Q.2D (BNA) 1700 (S.D.N.Y. 1999) ................................................... 8

Nixon Gear & Mach. Co., Inc., 86 A.D.2d 746;
447 N.Y.S.2d 779 (4th Dep't 1982)..................................................................... 6

N.Y. Tel. Co. v. Teichner, 69 Misc. 2d 135;
329 N.Y.S.2d 689 (Sup. Ct. Suffolk Co. 1972) ................................................. 5, 6

Ruotolo v. City of New York, 2008 U.S.App. LEXIS 2551
(2d Cir. 2008)...................................................................................................... 1

Wakefield v. Northern Telecom, Inc. 769 F.2d 109 (2d Cir. 1985)................ 6

Willsea v. Theis, No. 98 Civ. 6773 (BSJ). 1999 WL 595629 (S.D.N.Y. 1999).............. 4

**Statutes Cited:**

17 U.S.C. § 115 ................................................................................................ 3, 4

**Treatises Cited:**

Keller & Cunard, *Copyright Law* § 5:3.2[A][1] (2007) ..................................... 6, 7

**Other:**

Webster, New World Dictionary (2d Ed. 1968) ............................................... 4

**Preliminary Statement**

Plaintiff's opposition memorandum is a contorted, tortured exercise in avoiding clear documentary evidence and Plaintiff's more than twenty years of acquiescence in Taco Tunes, Inc.'s ("Taco Tunes") exercise of control over six musical compositions allegedly written by him (the "Compositions").[1] The speciousness of Plaintiff's arguments is evident from both his own admissions in the pleadings and the only fair reading of the relevant documents.[2]

**Argument**

**I.  TACO TUNES HAS THE RIGHT TO LICENSE THE COMPOSITIONS AS EITHER THEIR OWNER OR PLAINTIFF'S LICENSEE**

Plaintiff bases his case on an intentionally confused amalgamation of the concepts of authorship, ownership, and authority of a licensee to act as a third party licensor. His claim that he is the sole author of the Compositions is contravened by the express language of Exhibit B of the agreement into which he entered with Taco Tunes and Ramones Productions, Inc. dated August 1, 1984 (the "1984 Agreement," a copy of which is annexed to the Affirmation of Stewart Levy – "Levy Aff." as Ex. F). It is also irrelevant to the fact that he granted Taco Tunes the exclusive and perpetual right to license third parties to commercially exploit those Compositions in connection with the recordings of The Ramones on which Plaintiff performed as a contract musician. Defendant Taco Tunes whether: (a) as Plaintiff's licensee; or (b) the owner of the Compositions, by virtue of the 1984 Agreement or Plaintiff's untimely failure to

---

[1] The six musical compositions at issue in this case are *Smash You, Somebody Put Something in My Drink, Human Kind, I'm Not Jesus, I Know Better Now* and *(You) Can't Say Anything Nice.*

[2] Plaintiff also misrepresents the standard for review by citing the decision in *Conley v. Gibson*, 355 U.S. 41 (1957). The *Conley* standard was rejected by the Supreme Court in *Bell Atlantic v. Twombly*, 2007 U.S. LEXIS 5901, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) which imposes upon a plaintiff a higher "plausibility" standard than did *Conley* in order to survive a motion to dismiss. *See also Ruotolo v. City of New York*, 2008 U.S. App. LEXIS 2551 (2d Cir. 2008) ["To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" (citing *Bell Atlantic v. Twombly*)].

G:\APPL\PUBDOC\18047\USDC REPLY MOL SLL 3-4-08 FINAL.doc

contest Taco Tunes' exercise of dominion over them, has for years legally licensed to third parties the Compositions' use in connection with the recordings which Plaintiff made with The Ramones.

## II.  THE 1984 AGREEMENT GRANTS TACO TUNES THE NEEDED EXPRESS LICENSE

Regardless of the ownership issue, the definitions of the relevant terms in the 1984 Agreement are dispositive of this motion because they establish the existence of an exclusive, perpetual license granted by Plaintiff to Taco Tunes to exploit the Compositions in connection with their recordings by the Ramones.

### (A) Paragraph 5 of the 1984 Agreement Conveys An Unlimited Express License for Uses of the Masters

Plaintiff alleges only that Taco Tunes has licensed the use of the Compositions in connection with recordings of them made by The Ramones. The fundamental purpose of the 1984 Agreement was to enable that group to commercially exploit its recordings. Here, there is no allegation that the Compositions were licensed separate and apart from those recordings. Thus, the issue in this case is the inextricable, intertwined relationship between the Compositions and their recording by Plaintiff with The Ramones. That relationship is defined in the 1984 Agreement as constituting "Masters."

Pursuant to paragraph 1(b) of the 1984 Agreement, a "Master" is "the equivalent of a 7 inch, 45 rpm, single-sided *recording*[3] **embodying the recorded performances by 'The Ramones'** . . ." (emphasis added). That contractual definition of "Master," coupled with the express license granted by Plaintiff in paragraph 10(a) of the 1984 Agreement that: *"Controlled*

---

[3] "Records," "phonograph records," "recordings" and "derivatives" are defined in paragraph 1(d) of the 1984 Agreement as being "all forms of reproductions including pre-recorded tapes and discs and electronic video recordings, now or hereafter known, manufactured or sold primarily for home use, school use, juke box use or use on means of transportation . . ."

***Compositions included on records recorded hereunder are hereby licensed to Company . . .***" (emphasis added) clearly allow Defendants Ramones Productions, Inc. ("RPI") and Taco Tunes to commercially exploit the inextricably linked Masters and the Compositions contained therein in virtually unlimited fashion. Specifically, paragraph 5 of the 1984 Agreement grants to RPI and Taco Tunes, in pertinent part:

> 5. "... ***the sole and exclusive right to use the Masters throughout the Territory or any part thereof in any manner they see fit***, including, the sole and exclusive right . . .
>
> > (a) ***to manufacture, advertise, sell, distribute, lease, license or otherwise use or dispose of the Masters . . . in any and all fields of use, by any method now or hereafter known . . .***
> >
> > (b) to perform the Masters publicly and ***to permit the public performance thereof by means of radio broadcast, television broadcast or any other method now or hereafter known***; . . . (emphasis added).

Since the Masters include the Compositions, the 1984 Agreement expressly grants to Defendants RPI and Taco Tunes the authority to commercially exploit both the Masters and Controlled Compositions embodied thereon in an unrestricted fashion.[4]

### (B) Paragraph 10 Also Grants the Needed Express License

Plaintiff concedes, as he must, that (i) Paragraph 10(a) of the 1984 Agreement grants Defendants an express license to exploit the Compositions in "records manufactured or sold primarily for home use") and (ii) "records," as defined in the 1984 Agreement, includes "all forms of reproduction . . . now or hereafter known." *Id.* Plaintiff nevertheless contends that the Digital Defendants' digital download exploitation of the Compositions falls outside this express

---

[4] Paragraph 10(c), which deals with the ancillary publishing agreement between Plaintiff and Taco Tunes and such issues as the credit to be accorded Plaintiff as the writer of the Compositions and the co-publishing agreement between Taco Tunes and Warner Bros. Music, is consistent with the express license contained in paragraph 5.

license because such exploitation involves neither a sale nor a manufacture of records. Plaintiff's argument is belied by Plaintiff's own admissions and common sense.

Plaintiff expressly and repeatedly concedes in his complaint that the Digital Defendants are **selling** the digital downloads. In the Complaint's Preliminary Statement, Plaintiff alleges that the Digital Defendants "**sell** digital downloads embodying the Compositions" (emphasis added). In paragraphs 23, 24 and 25 of the Complaint, Plaintiff repeats this admission three different times, separately alleging that each of the Digital Defendants has "continuously **sold** and **offered to sell** digital recordings of one or more of the Compositions" (emphasis added). It is the height of hypocrisy for Plaintiff to now argue, contrary to his own allegations, that the Digital Defendants allegedly are not selling these products. Plaintiff's allegations are fatal and doom his claim.[5] *See, i.e., Willsea v. Theis*, No. 98 Civ. 6773 (BSJ), 1999 WL 595629, at *9 (S.D.N.Y. Aug. 6, 1999) (granting motion to dismiss copyright infringement claim because of fatal allegation in complaint that plaintiff and defendant were co-owners of the work).

Plaintiff's contention that the digital downloads are not "manufactured" is equally implausible. In support, Plaintiff merely offers a one sentence conclusory assertion that the digital downloads purportedly are not "manufactured" because they are "transmitted, electronically" and not fixed in a traditional physical device. (Pl. Mem. At 11-12) This argument is nonsensical. First, whether downloads are fixed in a "physical device" is irrelevant to whether they are "manufactured." To the contrary, "manufactured" means "the making of something *in any way.*" *Webster's New World Dictionary* (2d Ed. 1968) (emphasis added). Second, Defendants' digital download sales are, in fact, "fixed," albeit on computer files, as opposed to

---

[5] Plaintiff's effort to defeat his fatal admission by referring to alleged and isolated portions of the Defendants' websites (all of which lie outside the record and are contradicted by Plaintiff's own admissions, and none of which establish Plaintiff's "license" argument in any event) is unavailing.

CDs. The United States Copyright Laws treat digital downloads as involving "mechanical" reproduction rights. *See* 17 U.S.C. §115. Third, Plaintiff's contrived reading of Paragraph 10(b) ignores the 1984 Agreement's expressly fluid definition of "records" which incorporates their exploitation "in any or all fields of use, by any method now or hereafter known." (Levy Aff., Ex. F, ¶5(a)). Plaintiff's contention that the term "manufactured" is limited to old-fashioned manufacturing processes reads this critical language out of existence. Finally, Plaintiff's reading also ignores that the phrase, "manufactured or sold," is not a stand-alone requirement of the license grant. To the contrary, it merely modifies the requirement that records be manufactured or sold primarily for home and other non-commercial uses – plainly the situation here.

For each of the foregoing reasons, Plaintiff's contention that the express licenses in Paragraph 10(a) do not extend to digital exploitation is specious and should be rejected.

### III. THE 1984 AGREEMENT ALSO IMPLIEDLY LICENSES DEFENDANTS' USE OF THE COMPOSITIONS

An example of Plaintiff's double-speak is found in his argument against the existence of expressed licenses contained in the 1984 Agreement which would grant digital rights or the right to exploit the Compositions over the Internet. Incredibly, Plaintiff at the same time argues that Defendants can have no implied license rights to exploit the Compositions digitally because the 1984 Agreement and, in particular, paragraph 10(b), includes an express license covering the "subject matter." Plaintiff, having argued that the 1984 Agreement contains no such express license, cannot avail himself of the purported rule that implied contracts cannot co-exist with express contracts covering the same subject matter.

Plaintiff, moreover, improperly relies on case law concerning when a party can bring a

claim for an implied-in-fact contract.[6] These cases are inapposite where, as here, Defendants ask this Court to recognize that an implied license, regarding one particular form of exploitation, is embodied within the written contract before this Court. "Implied contractual obligations [and, thus, rights] may coexist with express provisions . . . where common expectations or the relationship of the parties as structured by the contract so dictate." *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 112 (2d Cir. 1985). This is true even where the implied point is "seemingly negate[d]" by the express provisions of the contract. *Id.*

Here, the express provisions of the 1984 Agreement are consistent with the implied license. Under the 1984 Agreement's express provisions, Plaintiff granted Defendants all rights necessary to exploit the recordings of the Ramones (the works at issue here) *"in any and all fields of use, by any method now or hereafter known..."* and further agreed that *"Controlled Compositions included on records recorded hereunder are hereby licensed to Company..."* (1984 Agreement at ¶¶5 and 10(b)). Plaintiff's argument that he did not impliedly license digital exploitation reads the 1984 Agreement as giving with one hand and taking with the other. Plainly, that is not how the 1984 Agreement should operate.

IV.  **TACO TUNES IS THE COPYRIGHT OWNER OF THE COMPOSITIONS, AND PLAINTIFF'S OBJECTIONS ARE STALE**

Plaintiff buries in a footnote, as if it were meaningless, the dispositive fact that Taco Tunes has been listed with the United States Copyright Office as the copyright claimant of *Human Kind* since 1984 and of *I Know Better Now* and *I'm Not Jesus* since 1987. (Pl. Mem. At

---

[6] The cases cited by Plaintiff are not on point. Thus, *N.Y. Tel. Co. v. Teichner*, 69 Misc. 2d 135, 138, 329 N.Y.S.2d 689 (Sup. Ct. Suffolk Co. 1972) involved an unsuccessful attempt to bind a party not privy to a written contract to the terms of that contract. In *Miller v. Schloss*, 218 N.Y. 400, 407 (1916) the issue of an implied-in-fact contract was not even adjudicated. And in *Nixon Gear & Mach. Co., Inc.*, 86 A.D.2d 746, 447 N.Y.S.2d 779 (4th Dep't 1982) the Court merely refused to allow the plaintiff to bifurcate its one contract claim into two claims based on both express and implied contract theories.

18-19, n. 9) Yet, under the rules of the Copyright Office, the category of "claimant" includes, in addition to an author, "any other party that has come to own all the rights under the copyright initially belonging to the author – for example, by assignment." Keller & Cunard, Copyright Law §5:3.2[A][1] (2007). Plaintiff's assertion that, as the sole author of the Compositions, he is the copyright claimant and sole owner of their copyrights is thus simply wrong.

Similarly in error is Plaintiff's contention that Section 10(b) of the 1984 Agreement, which requires Plaintiff to enter into a songwriter's agreement with regard to Taco Tunes' right to publish and otherwise commercially exploit the Compositions, is merely an "agreement to agree." In reality, the parties have been operating under this "agreement to agree" for over twenty years. Indeed, Plaintiff admits that Taco Tunes has been exploiting the Compositions for this lengthy period of time and accounting to Plaintiff for such use, despite the fact that, as Plaintiff contends, the 1984 Agreement is allegedly "silent" on material terms. Plaintiff cannot have it both ways: admitting in state court (where he has brought his breach of contract claims) that there is an enforceable agreement setting forth the terms under which Defendants can exploit the Compositions, but denying in this Court that such an agreement exists.

In perhaps the most transparently false statement contained in Plaintiff's memorandum, and a blatant attempt to circumvent the statute of limitations which would preclude his contesting Taco Tunes' ownership rights, Plaintiff asserts that, until he was served with the motion to dismiss in this action, he had no idea that Taco Tunes claimed an ownership interest in the Compositions (Pl. Mem. At 17-18). Contrary to Plaintiff's contentions, Plaintiff was on notice of Taco Tunes' ownership position for more than three years before filing his Complaint. In addition to the fact that Taco Tunes' exercise of ownership and control over the Compositions was no secret, with its copyright registration certificates for three of the Compositions being a

matter of public record for over two decades, Plaintiff's own Complaint belies that Plaintiff did not know of Taco Tunes' position until Defendants filed their motion to dismiss.

That Complaint, filed nearly four months before Defendants brought this motion, seeks "a declaration that Plaintiff is the sole owner of all copyrights in the Compositions." (Cplt., Prayer for Relief (paragraph d), filed September 20, 2007; Am. Cplt, Prayer for Relief (paragraph d)). Plaintiff would not have sought this declaration unless he was on notice of the ownership dispute. Plaintiff's Complaint goes on to allege that "for more than twenty (20) years," Defendant Taco Tunes has exploited the Compositions "in blatant contravention of Plaintiff's sole ownership of the Compositions" and held itself out "as the publisher" of these works. (Am. Cplt. ¶20).

Plaintiff also admits in his opposition brief that he was put on notice of Taco Tunes' alleged improper exploitation, which gave rise to this ownership dispute, in connection with his "investigation" leading to the filing of his state law claims (Pl. Mem. At 18 n. 7). Yet, it is undisputed that Plaintiff first brought his state law claims in California in 2003 and then re-filed those claims in the New York Supreme Court on April 19, 2004, well over three years before Plaintiff filed this instant suit on September 21, 2007.[7] These facts, too, prove that Plaintiff was on notice of Taco Tunes' ownership claims well beyond the three-year limitations period. See *Minder Music, Ltd. v. Mellow Smoke Music Co.*, 1999 U.S. Dist. LEXIS 16001, *2; 52 U.S.P.Q.2D (BNA) 1700 (S.D.N.Y. 1999) (summary judgment granted dismissing case where the evidence showed that " plaintiff could have investigated the merits of defendants' ownership claim" more than three years prior to the commencement of the action). For this reason as well,

---

[7] Plaintiff also concedes that Defendant Apple began its digital download sales in 2003. (Pl. Mem. At 17 n.6). It is thus irrelevant that Plaintiff seeks infringement damages only for exploitation occurring in the last three years (Pl. Mem. At 9). Plaintiff cannot avoid a limitations bar simply by ignoring earlier acts.

G:\APPL\PUBDOC\18047\USDC REPLY MOL SLL 3-4-08 FINAL.doc

Defendants' motion should be granted.

## V. PLAINTIFF'S CLAIMS BELONG IN STATE COURT

Although this issue has been fully briefed in Defendants' memorandum of law accompanying their motion to dismiss, Plaintiff's continued assertion that this Court has jurisdiction over this dispute even though a case involving similar claims and parties is pending in the New York State Supreme Court, and his denial that he is forum shopping, requires one final comment. Plaintiff, in the pending New York State Action goes beyond what he professes to be a claim limited to the "non-payment of royalties attributed to lawful use of the Compositions under the Express License" (Pl. Memo At 21).

In the fifth cause of action asserted against all the defendants in that case, where all of the Defendants here are named, with the exception of the Digital Defendants, he accuses them of having "collected funds… for music he [Plaintiff] wrote for the Ramones," alleges that they have held onto these monies improperly, and asks the Court to impose a constructive trust on all of those funds (Levy Aff., Ex. D, ¶60-62). Nowhere does he limit his claim to monies earned from the purported limited license he gave Defendants to exploit his recordings. Indeed, in paragraph 14 of the State complaint he identifies as revenue sources "Mr. Reinhardt's music publishing income, wrongly collected by Taco Tunes." A cause of action seeking to recover music publishing income "wrongly collected" is duplicative of Plaintiff's copyright action.

## VI. THE CONTRIBUTORY INFRINGEMENT CLAIM REMAINS DEFECTIVE

There is nothing in Plaintiff's memorandum of law which justifies retention of his contributory infringement claim against Defendants Estate of John Cummings, Ira Herzog, RPI and Herzog & Straus. Plaintiff lists boilerplate case law recognizing the theoretical existence of such a claim, but makes no showing that the parties accused of such contributory infringement

had actual or constructive knowledge and participated in the allegedly infringing conduct. In *Airframe Sys. v. L-3 Communs. Corp.*, 2006 U.S. Dist. LEXIS 64362, *8-9 (S.D.N.Y. 2006) the Court found that it did "not need to accept a plaintiff's conclusory allegations or legal conclusions offered as pleadings. A complaint consisting solely of those assertions and conclusions of law fails to state a claim." The rare cases in which contributory infringement has been found "involved exceptional cases involving a strong business relationship between the primary infringer and vicarious or contributory infringer." *Id.* That is not the case here.

### VII.   THE AWARD OF ATTORNEYS FEES AGAINST PLAINTIFF IS PROPER

Finally, Plaintiff's vehement reaction to Defendants' request for the award of attorney's fees in the event this action is dismissed is excessive. Defendants have acted within their rights to include this request in a motion which seeks to dismiss the complaint against them.

### Conclusion

For all the above reasons, as well as those set forth in the memorandum of law submitted in support of the motion, Defendants request that the Court dismiss Plaintiff's amended complaint in its entirety and award legal fees against him.

Dated:   New York, New York
    March 5, 2008

EISENBERG TANCHUM & LEVY
*Attorneys for Defendants Taco Tunes, Inc., Ramones Productions, Inc., The John Family Trust (incorrectly captioned as the "Estate of John Cummings"), Herzog & Straus and Ira Herzog*

By: _____
Stewart L. Levy (SL-2892)
James E. Doherty (JD-1596)
675 Third Avenue, Suite 2900
New York, New York 10017
Tel. #212-599-0777

To:   To: Roberts & Ritholz
*Attorneys for Plaintiff*
183 Madison Avenue, Penthouse
New York, New York 10016
Tel.#212-448-1800

G:\APPL\PUBDOC\18047\USDC REPLY MOL SLL 3-4-08 FINAL.doc

- 10 -