UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
RICHARD REINHARDT
(pka Richie Ramone and Richie Beau), an individual,    :     07 Civ. 8233 (SAS)

          Plaintiff,         :

    -against-         :     DECLARATION IN
               SUPPORT OF DAMAGES
WAL MART STORES, INC., APPLE, INC.,        AND ATTORNEY'S FEES
REALNETWORKS, INC., ESTATE OF
JOHN CUMMINGS  (aka JOHN RAMONE and     :
JOHNNY RAMONE), TACO TUNES, INC.,
RAMONES PRODUCTIONS, INC.,
HERZOG & STRAUS, IRA HERZOG,         :
          Defendants.        :
-----------------------------------------------------------------------X

       STEWART L. LEVY, declares under penalty of perjury that the following is true and correct:

       1.       I am counsel for defendants Taco Tunes, Inc. ("Taco Tunes"), Ramones Productions, Inc. ("Ramones Productions"), the John Family Trust (incorrectly named in the complaint as the "Estate of John Cummings"), Herzog & Straus and Ira Herzog (collectively referred to as the "Ramones Defendants"). I submit this Declaration to document attorneys' fees and expenses incurred by the Ramones Defendants in this action.

       2.       This case was commenced by Plaintiff in September 2007 by filing of a Summons and Complaint. An Amended Complaint was filed shortly after on January 8, 2008.

       3.       The Amended Complaint set forth claims of copyright infringement based on the commercial exploitation in digital format of musical compositions written by Plaintiff, which Plaintiff claimed violated a written agreement entered into by the parties in 1984.

4.       On January 18, 2008 this firm filed a motion seeking to dismiss the amended complaint in its entirety for plaintiff's failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

5.       This Court granted the Defendants motion and dismissed the case by Order dated April 18, 2008. A copy of which is annexed hereto as Exhibit A.

6.       I, together with my associate attorney and staff, gathered information, conducted extensive legal research and expended considerate time in preparing the motion to dismiss.

a. I was primarily responsible for this case. I have been practicing law since 1978 and have specialized in intellectual property law since 1981. I have represented members of the band, The Ramones and/or Ramones Productions, Inc., for over a decade and have expertise in the music and entertainment industries. My client roster has included Tupac Shakur, Naughty By Nature, and Ace Frehley of the group, KISS and currently includes Queen Latifah and Terrence Howard. I have a peer review rating of "AV" by Martindale-Hubbell. My current hourly rate is $475. However, due to the long standing arrangement with Ramones Productions, Inc., my rates have been capped at $375 per hour.

b. James E. Doherty graduated from law school in 1993. Together we formed the legal team in this action. Under the same arrangement this firm has with Ramones Productions, Inc., Mr. Doherty's rate has been maintained at $210 per hour, although for new clients his rate is $300 per hour. Mr. Doherty has a peer review rating of

"BV" by Martindale-Hubbell.

c.   While significant disbursements have also been incurred, this firm did not itemize such disbursements to distinguish expenses incurred in this action from those incurred as part of our general representation of Ramones Productions, Inc.  This motion will not therefore, seek to recover disbursements.  Nor will it seek to recover the cost of our clerical staff since it is not my firm's practice to bill for such services.

7.      Copies of the redacted bills sent to Ramones Productions, Inc. are attached hereto as Exhibit B.  They show only the time charges billed to Ramones Productions, Inc. relating to this action.  Note that Ramones Productions, Inc. has assumed the cost of my firm representing the Ramones Defendants.  The total amount of attorney's and support staff fees billed to the client in this case prior to the preparation of this application was $52,199.75.  It is for this amount that we seek award of attorneys' fees pursuant to 17 U.S.C. §505.

8.      Annexed hereto as Exhibit C is a copy of this firm's resume that contains relevant summaries of the professional biography for me and James E. Doherty.

Dated: New York, New York
       May 2, 2008

                                        EISENBERG TANCHUM & LEVY
                                        *Attorneys for Defendants Taco Tunes, Inc.,
                                        Ramones Productions, Inc., The John Family
                                        Trust (incorrectly captioned as the "Estate of
                                        John Cummings"), Herzog & Strauss and Ira
                                        Herzog*

                                        By:  _____
                                              Stewart L. Levy (SLL- 2892)
                                              675 Third Avenue, Suite 2900
                                              New York, New York 10017
                                              Tel.# 212-599-0777

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RICHARD REINHARDT (p/k/a RICHIE
RAMONE and RICHIE BEAU),

                           Plaintiff,

          - against -

WAL-MART STORES, INC., APPLE, INC.,
REALNETWORKS, INC., ESTATE OF
JOHN CUMMINGS (a/k/a JOHN RAMONE
and JOHNNY RAMONE), TACO TUNES,
INC., RAMONES PRODUCTIONS, INC.,
HERZOG & STRAUSS, and IRA HERZOG,

                     Defendants.

------------------------------------------------------------X

**OPINION AND ORDER**

07 Civ. 8233 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Richard Reinhardt (p/k/a Richie Ramone and Richie Beau) brings this action for copyright infringement against Wal-Mart Stores, Inc., Apple, Inc., RealNetworks, Inc., Taco Tunes, Inc., Ramones Productions, Inc., the Estate of John Cummings, Herzog & Strauss, and Ira Herzog (collectively, "Defendants") under the 1976 Copyright Act.  He also brings a claim for contributory infringement against the Estate of John Cummings, Ira Herzog, Herzog & Strauss,

1

and Ramones Productions.  Defendants have moved to dismiss the Amended

Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for

lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state

a claim upon which relief can be granted.  For the following reasons, the motion to

dismiss for failure to state a claim is granted and the case is dismissed.

## II.     BACKGROUND

### A.     Facts[1]

Richard Reinhardt was a member of the punk band the Ramones[2]

from 1983 to 1987.[3]  During that time he authored six songs – *Smash You,*

*Somebody Put Something in My Drink, Human Kind, I'm Not Jesus, I Know Better*

---

[1]     The following factual allegations, taken from the Complaint, are accepted as true for purposes of this motion.

[2]     Formed in 1974, the Ramones' first four albums were "punk cornerstones," fundamental to the development of American and British punk music.  John Pareles, *Dee Dee Ramone, Pioneer Punk Rocker, Dies at 50,* N.Y. Times, June 7, 2002.  The music of the Ramones is "explicitly juvenile, at once sweetly dumb and knowing, and, above all, blisteringly loud." Jonathan Lethem, *Wanting to Be Joey Ramone,* N.Y. Times, Apr. 20, 2001.  Their music was not immediately popular, and the band did not achieve commercial success in its lifetime.  They never had a "top 40" hit, and no Ramones album went platinum.  With hindsight, critics and fans alike have recognized their contributions to the development of American rock and punk music.  The Ramones were inducted into the Rock and Roll Hall of Fame in 2002.

[3]     *See* Amended Complaint ("Compl.") ¶ 1.

*Now,* and *(You) Can't Say Anything Nice* (the "Compositions").[4] He was the sole author of each Composition.[5] Reinhardt filed copyright registration applications for the Compositions with the U.S. Copyright Office sometime before the Complaint was filed.[6]

In 1984, Reinhardt entered into a recording agreement ("Recording Agreement") with Ramones Productions,[7] a corporation engaged in the business of "exploiting" the intellectual property, merchandise, and other products associated with the Ramones.[8] The Recording Agreement provided for Ramones Productions to "engage Plaintiff to record with the Ramones."[9] The Recording Agreement also granted Ramones Productions the limited right to "create physical sound recordings embodying the Compositions,"[10] with royalty payments to be made to Reinhardt for his performances on certain Ramones recordings.[11]

---

[4]      *See id.* ¶ 13.

[5]      *See id.* ¶ 14.

[6]      *See id.* ¶ 15.

[7]      *See id.* ¶ 16.

[8]      *Id.* ¶ 9.

[9]      *Id.* ¶ 16.

[10]     *Id.* ¶ 19.

[11]     *See id.* ¶ 16.

3

Taco Tunes is a corporation engaged in the business of "exploiting musical compositions owned by certain members of the Ramones."[12] The Recording Agreement "contemplates" a music publishing agreement between Reinhardt and Taco Tunes, but no terms were ever agreed to and no contract was completed.[13]

Wal-Mart Stores, Inc. ("Wal-Mart"), Apple, Inc. ("Apple"), and RealNetworks, Inc. ("RealNetworks"), are businesses which, inter alia, distribute sound recordings and other digital media over the Internet and in other electronic forms.[14] Taco Tunes authorized these defendants to electronically distribute and duplicate "non-physical digital copies" of the Compositions.[15]

Herzog & Strauss is a partnership that provides accounting, management, and financial advisory services.[16] Ira Herzog is a partner at Herzog & Strauss.[17] The Estate of John Cummings is the estate of the deceased Ramones

---

[12]    *Id.* ¶ 8.

[13]    *Id.* ¶ 17.

[14]    *See id.* ¶¶ 5-7.

[15]    *Id.* ¶ 21.

[16]    *See id.* ¶ 11.

[17]    *See id.* ¶ 12.

lead man, who was known professionally as Johnny Ramone.[18]  These defendants, along with Ramones Productions, have controlled in whole or in part, the policies and operations of Taco Tunes for over twenty years.[19]

### B.    Procedural History

Reinhardt filed suit against Defendants on September 21, 2007, for copyright infringement and brought an additional claim against the Estate of John Cummings, Herzog, Herzog & Strauss, and Ramones Productions for contributory infringement of his copyrights.  He seeks damages as well a declaratory judgement that he, and not Ramones Productions or Taco Tunes, is the sole owner of all the copyrights to the Compositions.

In a separate action, Reinhardt filed suit against John Cummings, Ira Herzog, Herzog & Strauss, Taco Tunes, Ramones Productions, and others in federal court in the Central District of California.  That action was dismissed on jurisdictional grounds, re-filed in state court in New York, and is currently pending.[20]  According to Reinhardt, the state action asserts contract and tort claims related to Defendants' "non-payment of royalties attributable to the lawful use of

---

[18]      *See id.* ¶ 10.

[19]      *See id.* ¶ 23.

[20]      *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 21 n.10.

the Compositions under the Express License."[21]

## III.  APPLICABLE LAW

### A.    Rule 12(b)(1) – Subject-Matter Jurisdiction

Federal courts have original and exclusive jurisdiction over cases arising under the Copyright Act.[22]  However, a case does not automatically fall within the jurisdiction of the federal courts simply because it concerns a copyright.[23]  If the dispute is about the ownership of a copyright, and turns on the interpretation of a contract, then no federal question is presented.  Unless the complaint asserts a remedy expressly granted by the Copyright Act, such as damages for infringement, or requires interpretation of the Copyright Act, there is no federal jurisdiction.[24]  In these types of cases, "the line between contract interpretation and statutory interpretation is not always clear."[25]

### B.    Rule 12(b)(6) – Motion to Dismiss

When deciding a defendant's motion to dismiss under Federal Rule of

---

[21]    *Id.* at 21.

[22]    *See* 28 U.S.C. § 1338(a).

[23]    *See Jasper v. Boniva Music, Inc.*, 314 F.3d 42, 46 (2d Cir. 2002).

[24]    *See id.*

[25]    *Id.*

6

Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[26] and "draw all inferences in the light most favorable to the non-moving party . . . ."[27] Nevertheless, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[28]

In deciding a motion to dismiss, the court is not limited to the face of the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[29] However, "before materials outside the record may become the basis for a dismissal . . . it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[30]

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and

---

[26]     *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1975 (2007) (quotation marks omitted). *Accord In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

[27]     *In re NYSE Specialists*, 503 F.3d at 95.

[28]     *Id.* (quotation marks omitted).

[29]     *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[30]     *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

plain statement of the claim showing that the pleader is entitled to relief.'"[31]  To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[32]  Although the complaint need not provide "detailed factual allegations,"[33] it must "amplify a claim with some factual allegations . . . to render the claim *plausible*."[34]  The standard is no longer that a complaint can be dismissed only if there is "no set of facts" that plaintiff could prove "which would entitle him to relief."[35]  Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"[36]

### C.    Copyright Infringement

Section 102 of title 17 of the United States Code provides copyright

---

[31]    *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[32]    *See Bell Atl.*, 127 S. Ct. at 1970.

[33]    *Id.* at 1964.  *Accord ATSI*, 493 F.3d at 98 n.2 (applying the standard of plausibility outside *Bell Atlantic*'s anti-trust context).

[34]    *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

[35]    *Bell Atl.*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45, 46 (1957)).  *Accord id.* ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").

[36]    *ATSI*, 493 F.3d at 98 (quoting *Bell Atl.*, 127 S. Ct. at 1965).

protection to "original works of authorship fixed in any tangible medium of expression," including musical works and accompanying words.[37] Moreover, under the Copyright Act, copyright in a protected work "vests initially in the author or authors of the work."[38] The Second Circuit has held that "copyright ownership is a 'bundle of discrete rights' regarding the owner's ability to use his property."[39] Additionally, a copyright owner may bring an infringement action against those who exploit her work without permission or assignment.[40] A copyright owner may convey the rights, either temporarily or permanently, to another, although the copyright owner may not convey more than the copyright protects.[41]

To succeed on a claim for infringement under the Copyright Act, "a plaintiff must show that (a) he owned a valid copyright to the songs and (b) defendants copied original constituent elements of these songs."[42] "[W]here an

---

[37]    17 U.S.C. § 102(a).

[38]    17 U.S.C. § 201.

[39]    *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007) (quoting *Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26, 35 (2d Cir. 2005)).

[40]    *See id.* at 98-99 (citing 17 U.S.C. § 501(b)).

[41]    *See id.* at 99.

[42]    *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390 (2d Cir. 2007).

9

author brings an infringement action against a purported licensee, the license may be raised as a defense."[43]  When the dispute is over whether a license exists, the alleged infringer has the burden of proving its existence.[44]  However, determining whether a defendant's activities fall within the scope of an existing license essentially involves a question of contract interpretation.[45]  If the contract language is unambiguous and conveys a definite meaning, its interpretation is a question of law for the court.  However, if "'the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another,' then the interpretation of the contract becomes a question of fact for the jury and extrinsic evidence of the parties' intent properly is admissible."[46]  In situations where the dispute is only over the scope of the license, "'the copyright owner bears the burden of proving that the defendant's copying was unauthorized.'"[47]  Because "interpretation of a contract is generally a question of

---

[43]    *Tasini v. New York Times Co.*, 206 F.3d 161, 170-71 (2d Cir. 2000).

[44]    *See id.* at 171.

[45]    *See Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).

[46]    *Id.* at 629 (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992)).

[47]    *Tasini*, 206 F.3d at 171 (quoting *Bourne*, 68 F.3d at 631).

10

law,"[48] it is "'suitable for disposition on a motion to dismiss.'"[49]

The Second Circuit continues to rely, in part, on *Bartsch v. Metro-Goldwyn-Mayer, Inc.*,[50] for determining whether the use of a new technology is covered by an existing license.[51] The preferred approach, used in *Bartsch* and reaffirmed in *Boosey & Hawkes Music Publishers, Ltd., v. Walt Disney Co.*, is "'that the licensee may properly pursue any uses that may reasonably be said to fall within the medium as described in the license.'"[52] This "new-use" analysis relies on neutral principles of contract interpretation – if a license is more reasonably read to benefit one party, that party should be able to rely on it.[53] A

---

[48]    *Revson v. Cinque & Cinque*, 221 F.3d 59, 66 (2d Cir. 2000).

[49]    *OBG Technical Servs. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 514 (D. Conn. 2007) (quoting *Kohl's Dep't Stores v. Rongrant Assocs.*, No. 04 Civ. 4907, 2005 WL 1263613, at *1 (E.D.N.Y. May 27, 2005)).

[50]    391 F.2d 150 (2d Cir. 1968).

[51]    *See Boosey & Hawkes Music Publishers, Ltd., v. Walt Disney Co.*, 145 F.3d 481, 487-88 (2d Cir. 1998). "Disputes about whether licensees may exploit licensed works through new marketing channels made possible by technologies developed after the licensing contract – often called 'new-use' problems – have vexed courts since at least the advent of the motion picture." *Id.* at 486.

[52]    *Id.* at 486-87 (quoting MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.10(b)).

[53]    *See id* at 487.

11

party seeking a departure from the most reasonable reading of the contract bears the burden of supporting its interpretation of the contract.[54]

## D.    Contributory Infringement

"'[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.'"[55] Contributory infringement includes personal conduct that encourages or assists the infringement.[56] There can be no contributory infringement absent actual infringement.[57]

## IV.    DISCUSSION

### A.    Subject-Matter Jurisdiction

Defendants argue that the Complaint should be dismissed for lack of subject-matter jurisdiction in light of Reinhardt's pending state court action.[58] Defendants contend that Reinhardt's true grievance involves monies

---

[54]    *See id.* at 488.

[55]    *Nat'l Geographic Enterp.*, 409 F.3d at 40 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

[56]    *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998).

[57]    *See Nat'l Geographic Enterp.*, 409 F.3d at 40.

[58]    *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss at 18.

12

allegedly not paid to him under the Recording Agreement, not copyright infringement.[59]  Additionally, Defendants claim that Reinhardt cannot bring two suits against identical defendants – one for improperly collecting royalties attributed to lawful use and the other for unlawful copyright infringement of the same works.

Reinhardt has properly alleged a federal claim.  Reinhardt has alleged that Defendants have infringed his copyright by exceeding the scope of their license.  Accordingly, he seeks damages for copyright infringement under the Copyright Act.  That Reinhardt has other grievances with Defendants related to the same Recording Agreement does not bar his right to seek remedies in federal court for alleged violations of the Copyright Act.  Because Reinhardt has properly alleged a cause of action arising under the Copyright Act, Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied.

**B.    Copyright Infringement**

Reinhardt alleges that Defendants have infringed his copyright through their "exploitation of the Compositions" in digital formats, without his permission.[60]  In their motion to dismiss, Defendants rely on the plain language of

---

[59]    *See id.*

[60]    Compl. ¶ 28.

13

the Recording Agreement to argue that their use of the Compositions, in a digital

format, is licensed by Reinhardt. Because the Recording Agreement is heavily

referenced by Reinhardt in the Complaint, it is incorporated by reference and I will

consider it on this motion to dismiss.[61]

      In pertinent part, section 5(a) of the Recording Agreement authorizes

Ramones Productions "to manufacture, advertise, sell, distribute, lease, license or

otherwise use or dispose of the Masters and phonograph records embodying the

Masters, in any or all fields of use, by any method now or hereafter known."[62]

      The Recording Agreement also provides that "'Records,'

'phonograph records,' 'recordings,' and 'derivatives' means all *forms of*

*reproduction* including pre-recorded tapes and discs and electronic video

recordings, *now or hereafter known*, manufactured or sold primarily for home use,

school use, juke box use or use on means of transportation . . . ."[63] "Master"

however, is specifically defined as "the equivalent of a 7 inch, 45 rpm, single-

---

    [61]   *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153-53 n.4 (2d Cir. 2002) (holding that contracts between plaintiff and a recording company were properly considered by the district court because the amended complaint was "replete with references to the contracts and requests judicial interpretation of their terms").

    [62]   8/1/84 Recording Agreement ("Recording Agreement"), Ex. F. to Affidavit of Stewart L. Levy, defendants' counsel, at 61.

    [63]   *Id.* at 58 (emphasis added).

14

sided recording embodying the recorded performances by the Ramones."[64]

This language is clear and unambiguous and conveys a definite meaning. The contractual language defining "phonograph records," when read together with the provisions of section 5(a), clearly authorizes the digital uses employed by Defendants. The phrase "now or hereafter known," when referring to forms of reproduction, reveals that future technologies are covered by the agreement.[65] This language creates an expansive rather than a restrictive conveyance of rights. It is not reasonable to construe the phrase "all forms" "now or hereafter known" to exclude Defendants' alleged digital download form, which now constitutes a form of reproduction. This unambiguous language forecloses other interpretations and the need to consider extrinsic evidence.[66]

---

[64]    *Id.* at 57.

[65]    When the parties intended to limit the definition of a certain term to a specific physical medium they did so, defining "Master" as a "7 inch, 45 rpm, single-sided recording," and "LP" as "12 inch, 33-1/3 rmp, long playing double-sided phonograph record." *Id.* "Phonograph records" has no such limiting language. Instead, it refers broadly to "all forms of reproductions." *Id.* at 58.

[66]    *See Boosey & Hawkes Music Publishers, Ltd.*, 145 F.3d at 486 (holding that a 1939 agreement conveying the right "to record [the composition] in any manner, medium or form" for use "in [a] motion picture" was sufficiently broad to include distribution in video format). *Accord Batiste v. Island Records, Inc.*, 179 F.3d 217, 223 (5th Cir. 1999) (holding that the right to use musical compositions "in any or all fields of use, by any method now or hereafter known, throughout the world" was sufficiently broad to include a digital sample).

Additionally, this result is consistent with the "new-use" analysis of *Boosey & Hawkes*. The Recording Agreement is more reasonably read to convey to Ramones Productions the right to sell and distribute the "phonograph records" through new technologies, including digital formats. The language authorizes use in "all forms," "now or hereafter known."[67] The most reasonable reading of this language supports Defendants' use in digital form.

Reinhardt argues that the license refers only to "all forms" that are "manufactured or sold," and digital downloads do not fall within its purview because they are transmitted and licensed to end users rather than manufactured or sold.[68] This argument is without merit. The distinction Reinhardt attempts to draw departs from the most reasonable reading of the contract and he therefore bears the burden of justifying this departure. Reinhardt has failed to meet this burden, particularly because he alleges that the digital recordings were sold, contradicting his own argument that digital recordings are licensed but not sold.[69] Accordingly, the claim for copyright infringement is dismissed as a matter of law.

---

[67]    Recording Agreement at 58.

[68]    *See* Pl. Mem. at 11-12.

[69]    As Defendants note, Reinhardt alleges in the Complaint that Apple, Wal-Mart, and RealNetworks "continuously sold and offered to sell digital recordings" of the Compositions. Compl. ¶¶ 24-26. *See* Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss at 4.

### C.    Contributory Infringement

Reinhardt also alleges that the Estate of John Cummings, Herzog & Strauss, Herzog, and Ramones Productions knowingly and willfully directed the policies, activities, and operations of Taco Tunes, which is one of the parties that allegedly infringed on Reinhardt's copyright.[70]  Because I hold that there is no copyright infringement, there cannot be any contributory infringement.  Therefore, that claim is dismissed.  Additionally, because there is no copyright infringement or contributory infringement, I need not address whether the claims are barred by the statute of limitations or the doctrines of laches, estoppel or implied consent.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion [No. 5  on the docket] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          April 18, 2008

---

[70]    *See* Compl. ¶¶ 32-33.

17

**-Appearances-**

**For Plaintiff:**

Jeff Sanders, Esq.
Roberts & Ritholz LLP
183 Madison Avenue, 19th Floor
New York, New York 10016
(212) 448-1800

**For Defendants:**

Stewart L. Levy, Esq.
James E. Doherty, Esq.
Eisenberg Tanchum & Levy
675 Third Avenue
New York, New York 10017
(212) 599-0777

*Of Counsel:*

Michael D. Friedman, Esq.
Troutman Sanders LLP
405 Lexington Avenue
New York, New York 10174

Curtis B. Krasik, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
535 Smithfield Street
Pittsburgh, Pennsylvania 15222

18

**EXHIBIT B**

EISENBERG TANCHUM & LEVY

675 THIRD AVENUE

NEW YORK, NEW YORK 10017

———

(212) 599-0777

———

TELECOPIER: (212) 599-0770

MICHAEL L. TANCHUM
RICHARD D. EISENBERG
STEWART L. LEVY

———

JAMES E. DOHERTY

ELLIOTT D. HEFLER
LETTY M. TANCHUM
DAVID GREENE
HAROLD GREENBERG
OF COUNSEL

December 10, 2007

**Email and Mail**
Ramones Production, Inc.
c/o Ira Herzog
156 West 56th Street
18th Floor
New York, New York 10019

---

**FOR PROFESSIONAL SERVICES RENDERED** from November 9, 2007 up to and including December 7, 2007, in connection with general representation including:

      (A)

      (B)    <u>Ramones adv. Reinhardt</u>, including

      (ii) United States District Court action: researched website of Copyright Office; drafted scheduling order; court appearance on 11/27; began researching and drafting motion to dismiss; telephone conversations with Curt Krasik, Michael Friedman ,Jeff Sanders and his associate (attorneys for Reinhardt), attorneys for Apple, Inc. and Warner Bros. Records correspondence.

          19.0 hrs of SLL @ $375  ................................................................ $7,125.00
          8.3 hrs of JED @ 210/hr ................................................................ 1,743.00

SUBTOTAL................................................................................................. $8,668.00

EISENBERG TANCHUM & LEVY

(C)

SUBTOTAL..................................................................

DISBURSEMENTS:

      Photocopies .................................................
      Messenger ...................................................
      Postage ......................................................
      Travel (to courts).........................................
      Lexis Legal Research ...................................

      Total Disbursements...................................

SUBTOTAL.................................................................

BALANCE DUE per bill dated 11/8/07 ...............................

TOTAL AMOUNT DUE ....................................................

EISENBERG TANCHUM & LEVY

675 THIRD AVENUE

NEW YORK, NEW YORK 10017

———

(212) 599-0777

———

TELECOPIER: (212) 599-0770

MICHAEL L. TANCHUM
RICHARD D. EISENBERG
STEWART L. LEVY

JAMES E. DOHERTY

ELLIOTT D. KEFLER
LETTY M. TANCHUM
DAVID GREENE
HAROLD GREENBERG
OF COUNSEL

January 18, 2008

**Email and Mail**
Ramones Production, Inc.
c/o Ira Herzog
156 West 56th Street
18th Floor
New York, New York 10019

**FOR PROFESSIONAL SERVICES RENDERED** from December 7, 2007 up to and including January 18, 2008, in connection with general representation including:

     (A)

     (B)    <u>Ramones adv. Reinhardt</u>, including

      (ii) *United States District Court action*: researched, drafted and revised motion to dismiss complaint including affidavit of Stewart L. Levy and memorandum of law; telephone conversations with attorneys for Reinhardt, Curt Krasik, Michael Friedman, Ira Herzog, Cynthia Arato (attorneys for Warner Bros. Records and the Digital Defendants); correspondence.

     58.1 hrs of SLL @ $375 .............................................................. $21,787.75
     21.6 hrs of JED @ $210/hr .......................................................... <u>$4,536.00</u>

EISENBERG TANCHUM & LEVY

     SUBTOTAL...................................................................................................$26,323.75

     (C)

     (D)

     (E)

     (F)

**SUBTOTAL..**

**DISBURSEMENTS:**

     Photocopies ....................................................
     Telecopies ......................................................
     Messenger ......................................................
     Postage ..........................................................
     Lexis Legal Research .....................................

     Total Disbursements.......................................

**SUBTOTAL**.....................................................................

**BALANCE DUE** per bill dated 12/10/07 ...............................

EISENBERG TANCHUM & LEVY

LESS PAYMENTS RECEIVED 12/15/07 and 1/2/08 .............

TOTAL AMOUNT DUE .............................................................

EISENBERG TANCHUM & LEVY

675 THIRD AVENUE

NEW YORK, NEW YORK 10017

(212) 599-0777

TELECOPIER: (212) 599-0770

MICHAEL L. TANCHUM
RICHARD D. EISENBERG
STEWART L. LEVY

JAMES E. DOHERTY

ELLIOTT D. HEFLER
LETTY M. TANCHUM
DAVID GREENE
HAROLD GREENBERG
OF COUNSEL

March 5, 2008

**Email and Mail**
Ramones Production, Inc.
c/o Ira Herzog
156 West 56th Street
18th Floor
New York, New York 10019

---

**FOR PROFESSIONAL SERVICES RENDERED** from January 18, 2008 up to and including March 4, 2008, in connection with general representation including:

(A)

(B)    <u>Ramones  adv. Reinhardt</u>, including

(ii) *United States District Court action*: reviewed Reinhardt's memo in opposition to motion to dismiss; researched and drafted reply memo; revised several times reply memo; telephone conversations with Michael Friedman, Curt Krasik, Cynthia Arato (representing Digital Defendants); correspondence.

33.4 hrs of SLL @ $375  ............................................................. $ 12,525.00
22.3 hrs of JED @ $210/hr ......................................................... $ 4,683.00

SUBTOTAL............................................................................................. $17,208.00

EISENBERG TANCHUM & LEVY

(C)

(D)

(E)

SUBTOTAL...............................................................................

DISBURSEMENTS:

      Photocopies ..........................................................
      Telecopies ...........................................................
      Messenger ...........................................................
      Postage ...............................................................
      Lexis Legal Research ...........................................
      United Lawyers Service .......................................

      Total Disbursements...........................................

SUBTOTAL................................................................

BALANCE DUE per bill dated 1/18/08  ........................

TOTAL AMOUNT DUE...............................................

**EXHIBIT C**

EISENBERG TANCHUM & LEVY

675 THIRD AVENUE

NEW YORK, NEW YORK 10017

(212) 599-0777

TELECOPIER: (212) 599-0770

MICHAEL L. TANCHUM
RICHARD D. EISENBERG
STEWART L. LEVY

JAMES E. DOHERTY

ELLIOTT D. HEFLER
LETTY M. TANCHUM
DAVID GREENE
HAROLD GREENBERG
OF COUNSEL

Eisenberg Tanchum & Levy ("ETL") is dedicated to quality legal representation and counsel to the business, real estate and financial communities. The firm was organized in 1985 with a commitment to provide responsive, creative and comprehensive legal services to its clients, both on a transactional basis and in the context of on-going legal representation. ETL has been successful in meeting its goals and serves its clients with the highest degree of professionalism. ETL understands the legal and business needs of its clients, including their desire for responsive service at a reasonable cost.

The firm offers its clients a broad range of legal specialties, including corporate, real estate, litigation, finance and entertainment law. Each matter is handled by a partner of the firm, all of whom are skilled and experienced negotiators and draftsmen. Set forth below is a brief description of the nature of the projects on which the lawyers of the firm have worked, together with their biographies.

## REAL ESTATE

Purchases and Sales; Work-Outs; Commercial Leasing; Syndications. ETL is experienced in the acquisition, development, and sale of residential, commercial and industrial properties. ETL represents both mortgagees and mortgagors in connection with acquisition loans, construction loans and refinancings. The firm also represents lessors and lessees in connection with commercial leasing matters, including net leases, office leases and retail shopping mall leases. In addition, the firm counsels clients engaged in work-outs and restructurings of loans and leases and represents creditors and debtors in various types of real estate bankruptcy cases. Members of the firm also have broad experience in representing multi-unit residential developments, apartment conversions and syndications.

Cooperatives, Condominiums and Lofts. ETL has extensive legal expertise in all areas of cooperative and condominium ownership of real property, including representing sponsors, cooperative corporations, and purchasers and sellers of individual cooperative, condominium and detached residential units and of unsold shares.

H:\MDM-WP\27001\FIRMRES\Res2007.WPD

EISENBERG TANCHUM & LEVY

## CORPORATE

General Corporate Representation; Contracts. ETL represents public and private corporations in various industries, including real estate, communications, banking, entertainment, energy, apparel and textile, manufacturing, retail, fragrance, publishing, food service, recording, importing and health care. In connection with the firm's representation of its clients, each member of the firm engages in the negotiation, drafting and review of almost every kind of business agreement, including loan agreements, shareholder agreements, agency agreements, brokerage agreements, joint venture agreements, manufacturing agreements, production agreements, distribution agreements and license agreements.

Employment Matters. The firm represents employers and employees in connection with employment contracts, severance and termination negotiations, and litigation.

Trademark Registrations. ETL has considerable experience in advising clients on trademark, copyright and other intellectual property law matters, and has a significant trademark registration practice.

Mergers and Acquisitions. The firm, on a continuing basis, represents numerous clients in connection with the sale and purchase of private and public corporations, including asset purchases, stock purchases and exchange offers.

Private Placements. ETL has extensive experience in structuring business transactions, including organizing business ventures, structuring the initial financing of such ventures through the private placement of stock or limited partnership interests and performing the legal work necessary to develop such ventures into operating entities.

Securities. Members of the firm have considerable experience in securities matters, including the preparation of registration statements, proxy statements, Regulation D disclosure memoranda and reporting documents, such as Forms 10-K and 8-K, processing Rule 144 transactions, preparing broker-dealer registrations and blue sky compliance. The firm represents both issuers and underwriters.

## FINANCE AND EQUIPMENT LEASING

The firm represents financial institutions, lenders and borrowers in connection with secured and unsecured commercial lending transactions, including asset-based financing, factoring and revolving credit agreements. ETL also represents major lending institutions in the area of residential mortgages and cooperative apartment loans.

H:\MDM-WP\27001\FIRMRES\Res2007.WPD

EISENBERG TANCHUM & LEVY

## LITIGATION

ETL has a substantial practice in the areas of entertainment, real estate, commercial and corporate litigation and arbitration. ETL has a specialty in copyright, trademark and music litigation. The firm also represents lessors and lessees in commercial real estate litigation as well as parties involved in employment and contract disputes, bankruptcy cases, real estate brokerage disputes, and securities fraud and insurance litigation. Members of ETL are experienced in all phases of civil litigation, including discovery, motion practice, trial and appellate work.

## ENTERTAINMENT

ETL represents both entertainment companies and talent in the recording, broadcasting and film industries. The firm's entertainment practice includes litigation and transactional representation. In addition, the firm acts as counsel to broadcast entities providing general corporate representation, including mergers and acquisitions, as well as advising clients with regard to Federal Communication Commission regulatory matters. The firm also performs pre-publication libel and defamation review for certain of its clients.

## BIOGRAPHIES

### Partners

Richard D. Eisenberg. Richard is a 1971 cum laude graduate of Harvard College, having been nominated by the College for a Rhodes Scholarship and having received the highest scholarship award granted to Harvard undergraduates. He is a 1975 graduate of the Boston University School of Law and a member of the Bar of the State of New York. Richard has substantial experience in real estate and corporate matters, and taught a course at Baruch College on Cooperatives and Condominiums. He is a Director of Palisades/High Point affiliated insurance companies and formerly was a Director of the Jewish Guild for the Blind, President of In Touch Networks, Inc., and a Trustee of the Brooklyn Music School. He started his legal career at Barrett Smith Schapiro Simon & Armstrong and, prior to founding the firm, was a partner at Greenberg Irwin & Weisinger.

Stewart L. Levy. Stewart graduated from the Yale Law School in 1977 where he was an editor of the Yale Legislative Services after having graduated summa cum laude from Columbia College in 1974. Prior to joining the firm in January, 1990, Stewart was a member of the firm of Parcher Arisohn & Hayes, P.C. where he specialized in entertainment-related litigation. Previously, he was associated with the firms of Schulte Roth & Zabel and Kornstein Meister & Veiz. He has had considerable experience in copyright and trademark matters and is well-versed in many facets of the entertainment industry, with particular emphasis on the negotiation of recording and motion picture contracts for artists. Stewart served as Co-Chairman of the Litigation and Legislation Sub-

EISENBERG TANCHUM & LEVY

Committee of the New York State Bar Association's Entertainment and Sports Law Committee, and has acted as a judge in the National Environmental Law Merit Court Competition presented by Pace University Law School, 2006 and 2007.

Michael L. Tanchum. Michael graduated from the Wharton School of Business of the University of Pennsylvania in 1969 and with distinction from Duke University School of Law, in 1972. At Duke, Michael served as an editor of the Duke Law Journal and received several awards for academic excellence. Michael specializes in corporate and real estate matters and is a member of the Bar of the State of New York. Michael serves on the Information Technology Advisory Board of Duke Law School. He started practice in New York as an associate at Simpson Thacher & Bartlett. He then helped to establish the real estate syndication department at Demov Morris Levin & Shein before leaving to become the corporate partner of Nitkin Alkalay Handler & Robbins. He also served as corporate counsel to a major robotics corporation.

## Associates

James E. Doherty. James graduated from Boston College's Carroll School of Management with a Bachelor of Science degree in 1990 and earned his Juris Doctor degree from Fordham University School of Law in 1993. He is a member of the Bar of both the State of New York and the State of New Jersey, as well as the District of Columbia. James has served on the Committee on Trademark Law within the Intellectual Property Law Section of the New York State Bar Association as well as the Entertainment Law Committee of the New York City Bar Association. He has significant litigation and counselling experience in the areas of entertainment law, intellectual property law, labor and employment law and general civil litigation. Prior to joining the firm, James was associated with Manning, Raab, Dealy & Sturm.

## Counsel

Elliott D. Hefler. Elliott graduated in 1967 from Columbia College and earned his Juris Doctor degree from the New York University School of Law in 1970. Elliott served as an Editor of the NYU Law Review and received awards for academic distinction. He is a member of the Bar of both the State of New York and the State of Florida. His areas of practice include real estate, corporate law and trusts and estates. Elliott was formerly a partner at Greenberg Irwin & Weisinger and an associate at Lord Day & Lord and Robinson, Silverman, Pearce, Aronsohn & Berman. He was also the General Counsel of two privately held real estate development and management corporations.

Letty M. Tanchum. Letty graduated from Duke University, summa cum laude, in 1971 and Duke University Law School in 1973. For 15 years, Letty worked as in house counsel at Capital Cities/ABC, specializing in all facets of communications law. Letty left ABC in 1989 and joined Oprah Winfrey's Harpo Productions, Inc., where she held the position of Vice President,

General Counsel. She is currently General Counsel to Ms. Winfrey's charitable foundations. She specializes in communications law, libel review and talent representation. Letty is a member of the Federal Communications Bar Association and serves on the Board of Visitors of Duke Law School.

    David Greene. David graduated in 1959 from Cornell University and earned his Juris Doctor from Harvard University in 1962. He is a member of the Bar of the State of New York. Previously he was a partner in the firm of Aberman Greene & Lichter where he had extensive experience in the areas of commercial litigation and in labor relations and employment matters. He has served as a trustee of union pension plans. He has also been general counsel to several trade associations and participated in numerous administrative proceedings before Federal, State and local agencies.

July 22, 2005